ROBERT L. SANKEY *v.* STATE OF INDIANA.

[No. 1-173A3.  Filed September 20, 1973.]

628

*Woodrow S. Nasser*, of Terre Haute, for appellant.

*Theodore L. Sendak*, Attorney General, *John H. Meyers*, Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant (Sankey) was convicted of illegal use of a credit card after a jury trial and sentenced to 365 days imprisonment and fined in the sum of $500.

Sankey timely filed a motion to correct errors which was overruled and this appeal follows. The following issues are presented for review :

(1) Whether the trial court erred in overruling defendant's motion to quash the arrest warrant, to dismiss the affidavit and for discharge because of the insufficiency of the supporting probable cause statement.

(2) Whether the court erred in permitting a police officer to testify on rebuttal as to statements Sankey made to him before being advised of his rights.

(3) Whether the court erred in denying a motion for mistrial after the prosecuting attorney asked an improper question inferring that another similar but unrelated offense had been committed by defendant.

(4) Whether the trial court erred in giving court's Instructions 1, 17 and 21 over defendant's objections.

(5) Whether the trial court erred in overruling defendant's motion to correct errors.

The evidence revealed that on December 19, 1971 at about two minutes before 8 :00 P.M. Sankey drove a 1968 Buick automobile into Clark's Shell Station at Brazil, Indiana. Although the night attendant. Thomas Miller. informed him

that the station was about to close, Sankey insisted on purchasing four new tires. Miller mounted the tires on Sankey's car. Sankey produced a Shell credit card issued to a Robert Sparks and charged the sale to Sparks by signing Sparks' name on the credit slip. The amount of the purchase was $230.52. At the time of the purchase Sankey's car displayed a license plate bearing number 71J5204, which had been reported lost or stolen.

Miller neglected to obtain the registration number of Sankey's car which is a requisite for payment from Shell to the station for the purchase. Miller called his employer, Wayne Clark, and informed him of what had taken place. Clark went to the Shell station, picked up Miller and together they drove through town looking for Sankey's car. As they passed the Brazilian Lanes, a bowling establishment, Miller recognized the automobile with the new tires mounted on it, but the car bore a different license plate with a 84 B or D prefix. Miller and Clark entered the bowling establishment where Miller identified Sankey as the purchaser of the tires. Sankey refused to give them the registration number of his car and denied buying the tires, saying, it must have been his brother. Clark testified that when he indicated that he was going to call the authorities, Sankey said "Let's don't get the law involved and you go with me and I'll give you the money." Clark called the Clay County Sheriff, and a deputy was dispatched to the bowling alley. Sankey was taken to jail where he was questioned by the Sheriff. He again denied buying the tires in Brazil, asserting instead that they had been purchased in Illinois. Sankey produced a temporary driving permit to the Sheriff which had been issued by the State of Indiana to a Robert F. Harris. Sankey was placed in jail and charges were filed the following day.

Sankey first asserts that the trial court erred in overruling his motion to quash the arrest warrant, dismiss the affidavit and order him discharged. He argues that the probable cause

statement fails to establish the credibility of the party providing the factual information, citing IC 1971, 35-1-6-2, Ind. Ann. Stat. § 9-602 (Burns 1972 Supp.) and *Kinnaird* v. *State* (1968), 251 Ind. 506, 242 N.E.2d 500.

In *Bryant* v. *State* (1972), 257 Ind. 679, 278 N.E.2d 576, the appellant contended that the trial court erred in overruiling his motion to suppress certain evidence arguing that the warrant for his arrest was not supported by a showing of probable cause as required by Art. 1, § 2 of the Indiana Constitution. Our Supreme Court conceded that the appellant's arrest was illegal in that the affidavit clearly violated the standards set down in *Kinnaird, supra.* However, the court went on to hold that an illegal arrest, without more, does not affect the right of the State to try a case, citing *Wells* v. *State* (1971), 256 Ind. 161, 267 N.E.2d 371.

In *DeWeese* v. *State* (1972), 258 Ind. 520, 282 N.E.2d 828, our Supreme Court held that the only consequence of an illegal arrest is the suppression of evidence thereby obtained. More recently, it has been held that the legality of an arrest has no relevancy on appeal when there is no issue as to the admissibility of any evidence obtained pursuant to the arrest or a search following the arrest. *Shelton* v. *State* (1972), 259 Ind. 559, 290 N.E.2d 47.

In the case at bar, Sankey raises no issue as to the admissibility of any evidence obtained pursuant to the arrest or a subsequent search. He argues error only in the trial court's failure to sustain his motion to quash, dismiss and discharge. We therefore hold that Sankey's first contention of error must fail.

Sankey next contends that the trial court erred in allowing a police officer to testify as to Sankey's statements and acts when Sankey had not been advised of his rights as required by *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694.

During the presentation of the State's case in chief the officer was prevented from giving this testimony by timely defense objections which were sustained. However, the court later permitted the testimony in rebuttal after Sankey himself testified concerning the statements and acts in question.

The United States Supreme Court has held that evidence rendered inadmissible against an accused in the State's case in chief under *Miranda, supra,* is not barred for all purposes. *Harris* v. *New York* (1971), 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1. The court held:

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See United States v. Knox, 396 U.S. 77, 90 S. Ct. 363, 24 L. Ed. 2d 275 (1969); cf. Dennis v. United States, 384 U.S. 855, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."

The above principle was cited and followed by the Indiana Supreme Court in *Johnson* v. *State* (1972), 258 Ind. 683, 284 N.E.2d 517.

We therefore hold that the police officer's testimony in the case at bar was correctly admitted to impeach Sankey's testimony concerning the events surrounding his arrest.

Sankey next contends that the trial court erred in overruling his motion for mistrial.

On cross-examination, the prosecutor asked Sankey whether he had ever been in possession of a credit card belonging to a Dr. Veach. Counsel for defendant immediately objected. The court sustained the objection and admonished the jury to disregard the question. The defendant then moved for a mistrial and his motion was overruled. Sankey argues on appeal that no amount of admonishment by the court could erase the prejudicial effect of the question upon the jury.

Sankey cites *DeHority* v. *State* (1939), 215 Ind. 390, 19 N.E.2d 945, in support of his argument that it is reversible error for the prosecuting attorney to refer to offenses committed by the defendant which have no connection with the case being tried. However, in that case, it was the trial court's failure to sustain an objection to the prosecutor's comment that the defendant had "attacked other women" that prompted reversal of the conviction. Two previous improper comments concerning other incidents in which the defendant allegedly attacked women were held to be sufficiently cured by the trial court's admonishments to the jury to disregard the prosecutor's assertions.

Sankey's reliance on *Hensley* v. *State* (1971), 256 Ind. 258, 268 N.E.2d 90, is also misplaced. In that case, the trial court, over defendant's objections, permitted the State to cross-examine the defendant concerning an alleged sexual attack on a person other than the prosecuting witness, which other person was also later permitted to testify concerning the alleged attack.

The granting of a motion for mistrial rests largely within the discretion of the trial court. *Bonds* v. *State* (1972), 258 Ind. 241, 280 N.E.2d 313; *Lolla* v. *State* (1973), 260 Ind. 221, 294 N.E.2d 798.

The test for determining whether a trial court has erred in overruling a motion for mistrial where inadmissible evidence has been revealed to the jury is expressed in *Moore* v. *State* (1972), 258 Ind. 200, 280 N.E. 2d 57:

"We have stated several times that this type of evidentiary 'harpoon' requires a mistrial where it is made by all the circumstances to appear that the error placed the accused in a position of grave peril to which he should not have been subjected. White v. State (1971), [257] Ind. [64], 272 N.E. 2d 312, 320, 26 Ind. Dec. 568. However, we have stated that in using this standard we must look to all the evidence in the case to determine whether or not such 'harpoon' must be considered to be reversible error. Dillard v. State (1971), [257] Ind. [282], 274 N.E.2d 387, 27 Ind. Dec. 346. In Dillard we quote Chapman v. California (1967), 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, to the effect that error can be deemed harmless only if the reviewing court can say that 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' "

We hold that in light of the court's prompt admonishment to the jury to disregard the question and in view of the strong evidence of guilt presented at trial, the prosecutor's question on cross-examination did not contribute to the verdict. The trial court did not err in overruling Sankey's motion for mistrial.

Sankey next contends that the trial court erred in giving court's instructions 1, 17, and 21 over defendant's objections.

Court's instruction 1 read:

"This is a criminal prosecution. A statute of this state requires the Court in such cases to charge the jury, and in such charge to state all matters of law which are necessary for their information in giving their verdict, and these instructions are given by the Court in compliance with that statute. However, the Constitution of Indiana provides that in all criminal cases whatsoever, the jury shall have the right to determine the law as well as the facts, and this provision confers upon you the right to determine and construe the law for yourselves, although your determination

may differ from that stated by the court in these instructions; *but, in determining the law, it is your sworn duty to determine it correctly, and as it is in fact, whatever may be the source of your information,* or the basis of your conclusion. It is your duty to consider and weigh the instructions given you by the court, and not arbitrarily, and without what you regard as a proper and sufficient reason, reject them; and when your determination shall have been reached, it should be with the conscientious conviction that you have, so far as you were able, correctly determined the law, as it is in fact." (Our Emphasis.)

We cannot agree with Sankey's contention that the above instruction allows the jury to base their verdict and conclusion upon any information whatsoever. It merely admonishes the jury that regardless of their sources of information, their *determination of the law must be correct.* Therefore, we are unable to conclude that Sankey was in any manner prejudiced by this instruction.

Likewise, we are unable to conclude that Sankey was prejudiced by court's instruction 17 which read:

"If a defendant is innocent, he should not be convicted erroneously; but, if a defendant is guilty, he should not be acquitted erroneously. By acquittal of the guilty a contempt of the law is aroused among the criminal classes and the safeguards of society are weakened."

A similar instruction was upheld by our Supreme Court in *Holiday* v. *State* (1970), 254 Ind. 85, 257 N.E.2d 679.

Sankey's contention that this instruction raises a prejudicial presumption of guilt must fail. While the draftsman's choice of terms may be somewhat less than appropriate, we are mindful of the established rule that instructions are not to be considered separately, but as a whole, in determining whether a defendant has been prejuduced. *Loftis* v. *State* (1971), 256 Ind. 417, 269 N.E.2d 746.

Court's instructions 6 and 8 emphatically inform the jury that the presumption of innocence remains with the defendant throughout the trial.

Sankey also objects to that part of court's instruction 21 which read:

"The Court instructs you that you have the right to draw reasonable inference from the evidence introduced in the trial of this case."

He argues that this instruction allows the jury to consider evidence which has been introduced, but not accepted by the court. However, we are not convinced that the jury would be so misled in light of previously given court's instruction 18 which read in part:

"You are to give consideration only to such evidence as the court has permitted to be introduced in the case. The questions and statements and arguments of counsel relative to the admission of evidence, transpiring in your hearing, was directed to the Court and for the consideration of the court alone, and not the jury, for the purpose of enabling the court to determine the admissibility thereof; and it is not proper for you to consider, in passing on the guilt or innocence of this defendant, anything transpiring in your presence, except such as has been admitted and introduced in evidence."

Finding no reversible error in the proceedings, we hold that the trial court did not err in overruling Sankey's motion to correct errors, and judgment is hereby affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 301 N.E.2d 235.