PHYLLIS WILLIAMS *v.* STATE OF INDIANA.

[No. 671S163. Filed December 13, 1973.]

*James R. White,* of New Castle, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of automobile banditry under Acts of 1929, ch. 54, § 3, IC 35-12-2-1, 1956 Repl. Burns Ind. Ann. Stat. § 10-4710. She was sentenced to imprisonment for not less than one nor more than five years. Her appeal to this Court asserts the following five errors which will be treated in the order stated.

  I. Denial of her motion to discharge, which motion was predicated upon the alleged failure to the charging affidavit to state sufficient facts to support the arrest warrant.

  II. Denial of her motion to discharge upon the additional grounds that the arresting officer had no reasonable grounds to believe that a felony had been committed or attempted, or that the defendant had done either.

  III. Insufficiency of the evidence.

  IV. Admission of hearsay evidence.

  V. Denial of her motion for a new trial upon grounds of newly discovered evidence.

  I & II. Validity of Arrest.

These alleged errors present no question for review. The illegality of the arrest, if in fact it was illegal, is of consequence at this stage of the proceedings, only if it is determined that evidence was obtained in consequence

thereof and admitted at the trial. *Layton* v. *State* (1968), 251 Ind. 205, 209, 240 N. E. 2d 489, 491; *Farmer* v. *State* (1971), 257 Ind. 629, 275 N. E. 2d 783, 785. An illegal arrest does not destroy a valid conviction. *Wells* v. *State* (1971), 256 Ind. 161, 267 N. E. 2d 371, 373; and does not amount to a denial of due process. *Dickens* v. *State* (1970), 254 Ind. 388, 260 N. E. 2d 578, 579.

III. Sufficiency of the Evidence.

This Court will not, on appeal, weigh the evidence or determine the credibility of witnesses, and when the sufficiency of the evidence is raised as an issue on appeal, we will consider only that evidence most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. The conviction will be affirmed if, from that viewpoint, there is substantial evidence of probative value from which the trier of the facts could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Turner* v. *State* (1972), 259 Ind. 344, 287 N. E. 2d 339; *Pinkerton* v. *State* (1972), 258 Ind. 610, 283 N. E. 2d 376; *Fuller* v. *State* (1971), 256 Ind. 681, 271 N. E. 2d 720.

Viewed most favorably to the State, the evidence presented at the trial disclosed the following. On the evening of March 14, 1970, at about dusk in the City of New Castle, Henry County, the defendant requested her neighbor, Gene Ballenger, to move some furniture which she had purchased. Gene owned a truck and engaged in the junk hauling business. The defendant expressed a preference for having it done that night. Gene's truck was loaded, and it was agreed that she would go finish paying for the furniture while he unloaded his truck. At approximately 9:00 p.m., the defendant returned. In the meantime Gene had enlisted the aid of his brother, Paul, and his father, Leo. The four of them drove together in Gene's truck to a furnished tenant house on the farm of Paul Gallimore located in Henry County at an undisclosed distance from New Castle. They took with them some handtrucks

furnished by the defendant. The house had been vacant for a week or ten days and had been advertised for rent in the New Castle newspaper.

The defendant directed Gene, who drove the truck, to the tenant house, which set back a distance of one hundred twenty-six feet from the main road. As they approached to turn into the driveway to the house, the defendant instructed Gene to turn off the automobile lights. He did so, but the truck skidded and he immediately turned them back on. She directed him to drive to the back of the house and to back up to the porch. As Gene prepared to back the truck to the porch, she alighted from the truck and went to the back door. In the meantime, the truck became stuck momentarily in the mud. The defendant rapped at the door a few times, returned to the truck within two or three minutes and said that no one was at home but that they would go on in, as she had a key. During the trip to the tenant house, the defendant had stated that she had a bill of sale to the items they were to pick up and that she had a key to the house where they were located. She testified at the trial, however, that she did not have such a bill.

The home of the Gallimores was nearby, and Mr. Gallimore and a guest had observed the Ballenger truck approach the tenant house. They got into their own automobiles and drove to the tenant house to investigate. They drove into the driveway as the defendant returned to the truck from the porch. She immediately told the Ballengers that she knew the people and would go talk to them, that probably they would be angry about their being there and that the Ballengers should let her do the talking. She went to the Gallimore automobile and told Mr. Gallimore that he knew her and that she thought her sister lived there but that she had got into the wrong place. Mr. Gallimore sent his guest to call the sheriff. The defendant pled with Mr. Gallimore not to call the sheriff and said that they would "pin" things on her and let the others go. Mr. Gallimore refused her plea. The conversation became

loud, and Leo Ballenger went to investigate. The defendant returned to the truck at that time and told Gene and Paul that it would be worth $100.00 apiece to them if they would say that they had got into the wrong place.

Deputy Sheriffs were in the area investigating an automobile accident and had two intoxicated young men in their custody. Upon arrival of the Deputy Sheriffs, the defendant advised them that Mr. Gallimore thought they were breaking in but that they had turned into the driveway to turn around. The deputy in charge was anxious to get the intoxicated men to jail and asked the Ballengers and the defendant if they would accompany him to the office to talk about the matter further. All consented, and this was done. At the Sheriff's office, following an interview with the Ballengers, the deputy arrested the defendant for automobile banditry.

At approximately 8:00 p.m. on the same evening, and between the time the defendant first contacted Gene Ballenger for livery service and the time she embarked in the truck with him and his brother, Mr. Gallimore and his guests observed an automobile turn into the tenant house drive. The automobile was not identified as belonging to the defendant but it corresponded to the same general description as her automobile. As it turned into the drive, its lights were turned out. The automobile remained approximately five minutes while its occupant got out, went to the door of the house, returned and drove away. About one-half hour later, the defendant, driving alone, was involved in an automobile accident at a point on a direct route between the Gallimore farm and New Castle.

The defendant was the owner of five rental houses, one of which she rented furnished and two others she rented in a partially furnished state.

The defendant testified that she had purchased a refrigerator from a young man named Walden, whose first name she did not know but whose wife's name was Betty and that he had told her where the items could be picked up. She

further testified that she did not know Walden's whereabouts, that his wife had gone to Monticello, Kentucky; and that upon information from his sister, she had, on the evening preceding the commencement of the trial, unsuccessfully searched for him at a number of bars in Indianapolis. In rebuttal, Betty Walden testified that she was acquainted with the defendant and had, from time to time, been employed by her to care for her children and was caring for them during the trial. Mrs. Walden further testified that the defendant knew Mr. Walden's given name and the location of the Walden residence at the time of the occurrence leading to the criminal charges.

The primary thrust of the defendant's sufficiency argument is that there was no evidence that she, while at the Gallimore premises with the Ballengers, broke into or attempted to break into the house. There was some indication that the back door had been tampered with, but it is questionable whether or not this could be charged to her.

In a charge of automobile banditry, it is sufficient to prove an attempted felony in the use of a self-moving conveyance for the escape, attempted escape or intended escape. It is not necessary to prove the completed felony, even though it be alleged. *Kirk* v. *State* (1971), 256 Ind. 480, 269 N. E. 2d 751; *Dooley* v. *State* (1966), 247 Ind. 440, 217 N. E. 2d 46. The defendant apparently labors under the mistaken belief that there could be no attempted burglary without a showing of either a breaking into or a direct physical attempt to break into the house. Except as to third degree burglary, (Acts 1941, ch. 148, § 4, IC 35-13-4-4, 1956 Repl. Burns Ind. Ann. Stat. § 10-701[c]), an attempt to commit burglary is not a crime in this state. It may, however, become the basis for a charge of automobile banditry. *Hudson* v. *State* (1957), 236 Ind. 237, 139 N. E. 2d 917.

We find no Indiana cases defining attempted burglary. However, it has been well defined in other jurisdictions as a crime that falls short of completion through means other

than the defendant's voluntary relenting. *People* v. *Dogoda* (1956), 9 Ill. 2d 198, 137 N. E. 2d 386. In California it has been held that an attempt to commit a burglary consists of a direct but ineffectual act towards a commission of the offense, coupled with the specific intent to commit a burglary and that intent may be inferred from the circumstances. *People* v. *Cloninger* (1958), 165 Cal. App. 2d 86, 331 P. 2d 441. It has also been held that while neither the mere procuring of burglary tools nor the starting upon the road to the building was sufficient to constitute an attempt, going to the building with the purpose of breaking into it, with a felonious intent and the carrying along of the necessary implements was a sufficient overt act. *People* v. *Sullivan* (1903), 173 N. Y. 122, 65 N. E. 989.

It is impossible to lay down any general rule to determine what acts are too remote to constitute an attempt. Nevertheless, when there have been overt acts preparatory to the commission of the offense, coupled with the specific intent, which may be inferred from the acts, and it may be reasonably inferred therefrom that the crime would have been committed, but for some form of involuntary frustration, such acts may be deemed an attempt to commit the crime.

Applying this standard, the jury was clearly warranted in finding that the defendant's actions in recruiting the assistance of the Ballengers, misinforming them as to her authority and going to the Gallimore tenant house with the expressed intent and the means of entering and removing property therefrom constituted an attempted burglary. It is reasonable to infer that except for the interruption by Mr. Gallimore, and possibly the reluctance of the Ballengers to proceed, the defendant would have committed a burglary.

IV. Admission of Hearsay Evidence.

The deputy sheriff who made the arrest of the defendant testified as a witness for the State. He had responded to the call to come to the scene of the burglary and had

found the Ballengers and the defendant there. At his request, the Ballengers and the defendant accompanied him to the sheriff's office to give statements. His arrest of the defendant was predicated upon the information that the Ballengers had related to him on that occasion. Upon direct examination, the prosecutor interrogated the deputy with respect to the statements made by the defendant to Leo Ballenger on the night of the crime and related to him by Leo when he gave his statement at the sheriff's office. The defendant objected upon the grounds that "* * * the witness was not questioned on cross-examination as to the content of any statements given by any Ballengers." The objection was overruled. Similar interrogation followed, and the same objection was made and overruled. Defendant here urges that the deputy's testimony was hearsay, but this was not the grounds urged at the trial. A basis for the rejection of evidence differing from the one cited at trial may not be urged on appeal. *Jones* v. *State* (1973), 260 Ind. 463, 296 N. E. 2d 407; *Tyler* v. *State* (1968), 250 Ind. 419, 236 N. E. 2d 815.

It should also be noted that Leo Ballenger had previously testified without objection that the defendant had made the statements attributed to her by the deputy's hearsay testimony. Evidence erroneously admitted but having the same probative value as other evidence admitted without objection is harmless. *Boles* v. *State* (1973), 259 Ind. 661, 291 N. E. 2d 357; *Loehr* v. *National Security Life Insurance Co.* (1969), 144 Ind. App. 503, 247 N. E. 2d 232; *Shelby National Bank* v. *Hughes* (1968), 143 Ind. App. 265, 239 N. E. 2d 611.

V. Newly Discovered Evidence.

Evidence was presented from which it might have been inferred that the back door to the Gallimore tenant house had been tampered with. Mr. Gallimore testified that the lock had been damaged, although upon cross-examination he acknowledged that he did not know when it had occurred. In support of her motion to correct errors, the defendant filed

the affidavit of Mr. Gallimore to the effect that the damage had existed for some time prior to the evening of the attempted burglary. No counter-affidavit was filed, and the defendant urges that the allegations of the affidavit must, therefore, be taken as true and that such newly discovered evidence was of a magnitude likely to produce a different result upon a retrial.

Discretion to grant a new trial by reason of newly discovered evidence rests primarily with the trial court, and before this Court will conclude that a trial court erred in its ruling upon a motion based thereon, it must appear that the trial court could not reasonably have reached a conclusion that a different result was not probable. *Taylor* v. *State* (1971), 256 Ind. 92, 267 N. E. 2d 60; *Fultz* v. *State* (1968), 250 Ind. 43, 233 N. E. 2d 243; *Beyer* v. *State* (1972), 258 Ind. 227, 280 N. E. 2d 604.

It was not essential to the State's case to prove that the defendant had entered the tenant house or had tampered with the door thereto. In view of the abundant evidence that the defendant attempted to burglarize the Gallimore tenant house but was thwarted in her efforts, either by the sudden appearance of Mr. Gallimore or by the unwillingness of the Ballengers to assist after discovering that no one was at home, or by both, we cannot say that the trial court erred in its ruling upon this issue.

We find no reversible error, and the judgment of the trial court is affirmed.

Arterburn, C.J. and DeBruler, Givan and Hunter, JJ., concur.

NOTE.—Reported in 304 N. E. 2d 311.