DWIGHT WALKER *v.* STATE OF INDIANA.

[No. 673S129. Filed February 19, 1974.]

*Robert G. Mann,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Larry C. Gossett,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of armed robbery, inflicting physical injury in the commission of a felony, to-wit robbery and of violation of the 1935 firearms act. He was sentenced to life imprisonment upon the count of inflicting physical injury. By this appeal the defendant seeks a review upon four issues, which shall be treated in the order following.

I. Whether or not the defendant was denied effective assistance of counsel by the acts of the police officers who told potential witnesses not to speak with defense counsel.

II. Whether or not it was reversible error for the trial court to refuse to suppress all testimony by reason of the alleged illegal arrest of the defendant.

III. Whether or not it was reversible error upon the "firearms act" charge, for the court to refuse a motion to strike the testimony of the custodian of the licensing records upon grounds that it was not sufficiently connected with the defendant to be of probative value.

IV. Whether or not the evidence was sufficient upon the issue of whether or not the injury inflicted by the defendant was inflicted while he was engaged in the commission of a robbery.

\* \* \*

I. Upon this issue, counsel has gone to great lengths presenting us with authority in support of the right of a defendant to have his case properly prepared and in support of the proposition that, for the State to engage in conduct which would prevent or interfere with such preparation by counsel, would amount to a denial of effective counsel. We agree with these propositions and with the authorities cited; however, there has been no showing of such interference. Upon cross-examination of the witness, Kennedy, defense counsel attempted to extract a statement that investigating officer Watford had instructed him not to talk with defense counsel. The only information that was brought forth, however, was that the officer had told the witness that he did not have to talk to counsel. This in no way substantiates the charge of interference.

The defendant has further charged that the State failed to give defense counsel written statements or memoranda of statements from witnesses and evidence which could be exculpatory in nature, in response to his motion which the court had sustained. There has been no showing, however, that the State had any such statements, memoranda or exculpatory evidence. It could not produce what it did not have. Nor was there any showing, as suggested by counsel, that the witness, Kennedy, had any evidence or information that would have been exculpatory to the defendant.

II. The warrant for the defendant's arrest had been issued upon the probable cause affidavit of investigating officer, Watford. During the course of the trial, defense counsel introduced the affidavit into evidence and thereafter moved to "suppress the arrest." The court sustained the motion as a motion to suppress further testimony from the officer, and counsel later conceded that such was the intent of his motion. By his motion to correct errors and by his assignment herein, however, he refers to his "motion to suppress all testimony * * * for the reason it was the result of an arrest which was not upon probable

cause." This would amount to a motion to discharge. The record discloses no such motion. Were we to regard the motion to suppress the witness' testimony as such a motion, which appears to be the wish of the defendant in these proceedings, we would, nevertheless, hold that it was properly overruled. Without passing upon the validity of the arrest, it was of no consequence except insofar as it might have produced evidence at the trial. In that event, such evidence would be properly suppressed, if the arrest had been illegally made. The illegality of the arrest, if it was in fact illegal, did not destroy the valid conviction. *Williams* v. *State* (1973), 261 Ind. 385, 304 N. E. 2d 311. It did not affect the right of the State to try the case. *Bryant* v. *State* (1972), 257 Ind. 679, 278 N. E. 2d 576. And it did not amount to a denial of due process. *Dickens* v. *State* (1970), 254 Ind. 388, 260 N. E. 2d 578.

III. Connie Morris, Supervisor of the Firearms Licensing Section of the Indiana State Police, testified that she had made a thorough search of the records of individuals with permits to carry pistols in Indiana and that Dwight Walker was not so permitted, on the date of the offense. We fail to comprehend the defendant's contention that "* * * no where is there evidence that the defendant was the same Dwight Walker who had no license." The records searched were of persons having a license not of persons having no license. When the search revealed that no one by the name of Dwight Walker was licensed, it revealed that of all persons by that name, not one had such license. The possible inclusion of other persons within a group to which the defendant belonged cannot be held as excluding the defendant from that group.

IV. The evidence viewed most favorably to the State revealed that the victim, Jerry Hyatt, was making deliveries for his employer, the Borden Milk Company. He was requested by the defendant to deliver several containers of fruit juice to the defendant's home. As he did so, the defendant instructed him to knock upon the door, advising that his wife

would appear and pay him. As Mr. Hyatt turned to knock upon the door, the defendant pressed a gun against his back and told him not to move. Thereupon, the defendant tore the pockets from Mr. Hyatt's clothing and took approximately three hundred dollars from them. Apparently not being satisfied that he had all of the money under Mr. Hyatt's control, the defendant asked him where the rest of it was. Mr. Hyatt denied having any more, and the defendant ordered him, at gun point, to go with him to the truck, which the defendant searched. Finding no more money and still holding Mr. Hyatt at gun point, the defendant said, "let's go over in the weeds." Mr. Hyatt protested, and the defendant said, "I said, let's get over in the weeds. You want it right here, or do you want it over there." The two began to walk with the defendant holding the gun at the back of Mr. Hyatt's head. Mr. Hyatt concluded that he was going to be shot, and in an instant when the defendant's attention was diverted, he grabbed the gun. A scuffle ensued, during which the defendant shot Mr. Hyatt in the stomach.

Upon the foregoing evidence, the defendant contends that the robbery had been completed at the time of the shooting and that the proscribed conduct of inflicting physical injury while "engaged in the commission of a robbery" had not been proven. A robbery is seldom, if ever, accomplished by a single act. Rather a series of acts must transpire. We can no more say that it has been completed upon obtaining possession of the thing taken than we can say that it has not been commenced until that instant. To accomplish his mission, it was necessary for the defendant to complete his dominion over the money taken from Mr. Hyatt. Apparently this was to be accomplished by taking him to a more remote spot and in some manner restraining him. Possibly the defendant's purpose in giving Mr. Hyatt whatever it was that he was to receive in the weeds, was to coerce him into revealing a presumed hidden repository of more money. In either event, it was clearly a part of the

robbery operation. In the case of *Bissot* v. *State* (1876), 53 Ind. 408, we held that the killing of a watchman, while the accused was yet within the house and immediately after the watchman had come to the door by which the accused had entered, was committed "in the perpetration" of the burglary, notwithstanding that the breaking and entering had been effected prior to the killing. We referred to such killing as having been committed with the res gestae of the burglary and observed that if we were to adopt the construction urged by the accused, i.e., that inasmuch as the killing was committed after the entry it was not, therefore, committed "in the perpetration" of the burglary, it would be quite impractical to ever convict for murder committed in the perpetration of any of the felonies mentioned in the statute. The position urged by the defendant today is exactly the same as that urged by the defense in the *Bissot* case, and we think our reasoning in that case is altogether logical and must still apply.

We find no reversible error, and the judgment of the trial court is affirmed.

Arterburn, C.J. and Givan and Hunter, JJ., concur; De-Bruler, J., dissents with opinion.

### DISSENTING OPINION

DEBRULER, J.—The record of the proceedings before us shows that prior to trial, the Public Defender, assigned to represent appellant, filed the following Motion to Dismiss or Alternate Relief:

"Comes now Richard Kammen, attorney for the defendant, Dwight Walker who petitions and shows the court.

1.   That he is an attorney at law duly admitted to practice in the State of Indiana.

2.   That he is the attorney for Dwight Walker, defendant herein by reason of his appointment as public defender by Marion Criminal Court, Division 2.

3.   That this cause was previously set for trial on Thursday, the 7th of September, 1972. That on said day defendant

herein requested a continuance so that he might properly prepare for trial.

4. After said hearing petitioner herein attempted to speak with Mr. Jerry Hyatt, Mr. Max Turentine, Jr., Mr. Charles Kennedy and Mr. Thomas Trotter, all of whom are endorsed on the affidavit. At the time he tried to speak with the aforesaid individuals each of them informed him that they had been instructed by Sargent Alonzo Watford not to discuss the case with anyone.

5. At the time when the defendant herein was attempting to speak with the aforesaid individuals Sargent Alonzo Watford introduced himself to the petitioner herein and told petitioner that he did not want the defendant attempting to talk with any of the witnesses in the case, and that he was instructing these witnesses not to speak with the defendant. All of the aforesaid statements were made by Sargent Alonzo Watford in the presence and hearing of Jerry Hyatt, Max Turentine, Jr., Charles Kennedy, and Thomas Trotter.

Due to the incident heretofore described, defendants attorney is of the opinion that the defendant cannot receive a fair trial without proper relief from this court for the reason that the defendant has been deprived of an adequate defense by agents of the State of Indiana.

WHEREFORE, defendant prays that this cause be dismissed for the reason that agents of the State of Indiana [denied the] defendant the right of a fair trial and his right to an adequately prepared defense; that Mr. Jerry Hyatt, Max Turentine, Jr., Charles Kennedy and Thomas Trotter, be called before this court and be instructed to discuss this case, instruct that Sargent Alonzo Watford had no right to tell them not to discuss this case with defendants attorney. That Sargent Alonzo Watford of the Indianapolis Police Department be called before this court to show cause why he should not be held in contempt of this court."

The Prosecuting Attorney filed no response to this verified motion. The record contains no ruling of the trial on this motion, neither does it contain a transcript of any testimony given in support or opposition to the motion. However, appellant's motion to correct errors contained the following allegation of error among others:

"The defendant was denied a fair trial by misconduct

of agents of the State of Indiana, specifically Police Officers of the city of Indianapolis in that they hindered and effectively denied the defendant his right to effective counsel by telling potential witnesses not to speak with defense counsel."

This allegation of error is supported in the accompanying memorandum with this statement of facts and explanation:

"Prior to the trial of this cause, the defendant filed a verified motion for a dismissal or other relief for the reason that Police Officers of the City of Indianapolis had instructed potential witnesses not to speak with defendant's defense counsel. A hearing was held on the defendant's motion prior to the trial. The result of that hearing was not satisfactory in that the potential witnesses were not compelled to speak with defense counsel but were told that they could if they wanted to. Additionally, nothing was done to overcome the inherent prejudice resulting from the misconduct by the police officers. It is clear that an order by a police officer not to speak with defense counsel carries with it a certain mandatory quality to some individuals. Additionally, when confronted by defense counsel, there is a substantial possibility that these same types of individuals might lie to defense counsel. Only an order by the court compelling these individuals to discuss the matter at hand with defense counsel with sufficient deter [sic] to prejudice. No such order was granted and the defendant was unredeemably prejudiced in his right to have active counsel."

The order book entries do reveal that an evidentiary hearing was held upon the motion to correct errors, although no indication is given, which allegation of error was the subject of that hearing. The evidence thus adduced by both sides is not contained in the record. The above memorandum clearly establishes that trial court dealt with the appellant's claim that the prosecution had "shut the mouth" of the State's eye witness Henry, and in fact fashioned a form of remedy for appellant prior to trial.

The testimony of the eye witness Henry at trial, in addition to admitting that the police officer had instructed him that he did not have to talk to defense counsel, also included the statement that this same officer had threatened to arrest the witness Henry and to charge him with shooting the milkman.

The witness Henry admitted being present on the street at the time of the shooting along with one Turentine. The milkman who was the victim of this shooting testified that part of the money taken from him was handed by the appellant to another man. Under these circumstances, and while it may not result in a different conclusion than that reached by the majority, in order that a proper determination of this issue be made by the court, I would order the trial court, pursuant to the provisions of Rule AP. 7.2(B) and (C) to certify all order book entries and the evidence adduced by either party in support of and in opposition to the Motion to Dismiss or Alternate Relief and the Motion to Correct Errors, and the order book entry disposing of appellant's Motion to Dismiss, to this Court. While this procedure should be sparingly used, I think it is warranted in this case by the circumstances related above, and further by the fact that appellant's counsel made a full and complete praecipe for the record in this case, and further by the fact that appellant's appeal counsel is not the lawyer who represented him at trial, and whose acquaintance with the status of the trial record is necessarily limited.

NOTE.—Reported in 307 N. E. 2d 62.