CLIFTON O. SMITH *v.* STATE OF INDIANA.

[No. 2-773A151. Filed September 12, 1974.]

*Harriette Bailey Conn* [*Mrs.*], Public Defender of Indiana, *Carr L. Darden, Sr.*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *Glenn A. Grampp*, Deputy Attorney General, for appellee.

### CASE SUMMARY

BUCHANAN, J.—Petitioner-Appellant Clifton O. Smith (Smith) appeals from the denial of his petition for post-conviction relief after jury conviction of possession of heroin claiming evidence as to his possession of heroin should have been excluded as there was no probable cause for his arrest and that the State failed to establish a complete and unbroken chain of custody of the heroin found on him at the time of his arrest.

We affirm.

### FACTS

The facts and evidence most favorable to the State are:

On July 17, 1970, after receiving complaints about automobile traffic at Smith's residence at 2862 Indianapolis Avenue

in Indianapolis, Indiana, from neighbors and people in the area, Police Officers James Brenton (Brenton) and Cicero Mukes (Mukes) (and one other) set up surveillance of the house.

They observed several people coming to and from the house. One of them related that Smith had sold him capsules containing heroin. A check with headquarters produced the report that an arrest warrant was on file for Smith for a violation of probation.

Brenton and Mukes then went to the Smith residence, and knocked on the front door. When Smith answered the door, he had a small brown envelope in his hand which he placed in his pocket when Brenton identified himself as a police officer. The officers entered the house and placed Smith under arrest for the probation violation. In a search conducted incident to this arrest, a brown envelope in Smith's front pocket and a clear plastic vial in his back pocket were seized.

The officers had no arrest warrant with them at the time of the arrest and did not produce one at trial.

Prior to trial, Smith moved to suppress all evidence obtained during the search of his person and the residence conducted incident to his arrest. After hearing, the trial court sustained this motion as to evidence obtained in the search of Smith's residence, but overruled his motion as to evidence obtained from his person.

At trial, Smith did not object to the admission of this evidence on the grounds that it was obtained pursuant to an illegal arrest. Smith did object to its admission on the grounds that a proper chain of custody and foundation connecting the heroin to him had not been established.

The brown envelope removed from Smith's pocket contained twenty-five capsules and the vial contained twenty-seven capsules, both of a white, powdery substance. After seizing the capsules, Mukes performed a Marquis Reagent Field test

which indicated the white powder contained a derivative of opium.

Before performing this test, Mukes placed his initials, the date, and the number of capsules contained on the brown envelope and the vial. After the field test, he placed the envelope and vial containing the capsules in his pocket and took them to Police Headquarters. There Sargent Crawley, the third officer involved in the stakeout and arrest of Smith, initialed it, and Mukes put the brown envelope in a larger manila envelope and took it to the Police Property Room where it was assigned a number and placed in the property room lock box. The same was done with the clear plastic vial also seized from Smith's back pocket.

Charles Caine, an officer assigned to the Crime Laboratory, testified that on July 17, 1970, he removed the two manila envelopes from the property room lock box and performed tests on the contents which proved the capsules contained heroin. After conducting these tests, he replaced the capsules in the brown envelope, marked them for identification, initialed the manila envelope, and returned it to the Police Department Property Room narcotics vault.

The manila envelope containing the evidence had the name Anthony Smith mistakenly printed on it at the time Mukes originally placed the evidence in the envelope before depositing it in the property room lock box.

At trial, Mukes identified the brown envelope and clear vial as being the items seized from Smith on July 17, 1970, at the time of his arrest. At the hearing on Smith's petition for post-conviction relief, Mukes testified he did not recall arresting anyone named Anthony Smith on the date in question.

Evidence presented by Smith at trial and at the subsequent hearing, tended to show that there was no arrest warrant in existence, nor was Smith on probation at the time of his arrest. The trial court offered to grant a continuance at the

post-conviction hearing to allow Smith to subpoena the Police Department to produce the alleged arrest warrant, but this opportunity was refused. Smith again objected to the admissibility of the seized heroin capsules on the ground that the State had failed to establish a complete and unbroken chain of custody.

Smith was found guilty by the jury of violating the Narcotics Act, specifically the possession of heroin, and sentenced to imprisonment for not less than two nor more than ten years.

At the subsequent hearing on Smith's petition for post-conviction relief, the trial court found that the petitioner had not shown by a preponderance of the evidence that his arrest was unlawful, or that the heroin seized at the time of the arrest pursuant to a body search was erroneously placed into evidence, or that the State had not sufficiently proven a proper chain of custody of that evidence.

This appeal follows.

## ISSUES

Smith presents two issues for our determination:

ISSUE ONE.

Did the State sufficiently establish a complete and unbroken chain of custody of the brown envelope and vial containing the heroin capsules seized from Smith at the time of his arrest?

ISSUE TWO.

Did the State sufficiently establish a complete and unbroken chain of custody of the brown envelope and vial containing the heroin capsules seized from Smith at the time of his arrest?

As to ISSUE ONE, Smith contends that as the State failed to produce the arrest warrant at trial there was no probable cause for his arrest and evidence obtained thereby should have been suppressed.

The State argues that because Smith refused the continuance offered by the trial court to ascertain the existence and validity of the arrest warrant, he has waived the question and that there was sufficient probable cause to effect a lawful arrest.

As to ISSUE TWO, Smith contends that the State failed to prove that Mukes and Caine were the only two officers who had access to and/or handled the evidence. Furthermore, the manila envelope containing the evidence had the name of Anthony Smith printed on it.

The State argues that Mukes identified the brown envelope and vial as being the articles seized from Smith, and that the heroin capsules and vial were admitted into evidence, and not the manila envelope in which they had been placed and on which an incorrect name had been printed. The State further contends that it does *not* have the burden of excluding every remote possibility of tampering.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that Smith has waived the issue of the admissibility of the heroin capsules found on his person by failing to object to the admission of that evidence on grounds of an illegal arrest.

The record reveals Smith's fatal omission:

"Mr. Helbert (Deputy Prosecuting Attorney) : At this time, Your Honor, the State will offer what has previously been marked for purposes of identification State's Exhibit One and Two into evidence." [the brown envelope and plastic vial each containing the heroin capsules]

\* \* \*

"Mr. Neel (Counsel for Defendant) : At this time, Your Honor, I am going to object to the introduction of the evidence. *It has not been established that these particular*

*items have in any way been taken from this defendant."*
(emphasis supplied)

We note that only in the Motion To Correct Errors filed after the post-conviction relief hearing, does Smith argue that the heroin capsules were illegally seized on the grounds that the search which produced this evidence was incident to an unlawful arrest.

The objection, however, is cast solely in terms of the "particular items" (heroin capsules) not having been taken from Smith, not in terms of fruit of an illegal arrest.

Failure to object on the grounds argued on appeal constitutes a waiver and preserves no issue for this Court to determine. Recent decisions of the Indiana Supreme Court reinforce this well-established principle. *Harrison* v. *State* (1972), 258 Ind. 359, 281 N.E.2d 98, 99.

Justice Hunter reviewed the law on this subject in *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N.E.2d 579, 582:

"It is clear from the above quoted objections entered by defense counsel that he was challenging the validity of the search on the ground that Mrs. Guthrie had no right to be in the trailer at the time she made her observations. On appeal, however, as above pointed out appellant seeks to raise an entirely new question as to the validity of the search, to wit: was Mrs. Guthrie acting at the instance and direction of the prosecuting attorney?

"[1] The general rule was stated by Wigmore in his treatise on evidence to be as follows:

'Specific Objection. A specific objection overruled will be effective to the extent of grounds specified, and no further. An objection overruled, therefore, naming a ground which is untenable, cannot be availed of because there was another and tenable ground which might have been named but was not: * * * 1 Wigmore on Evidence § 18 at 339-40 (1940).'

"The courts in this state have applied the rule on numerous occasions. See e.g. *Automobile Underwriters* v. *Camp* (1940), 217 Ind. 328, 27 N.E.2d 370; *Michigan City* v. *Werner* (1916), 186 Ind. 149, 114 N.E. 636; *Stout* v. *Rayl*

(1896), 146 Ind. 379, 45 N.E. 515. Although we do not pass lightly on the question of appellant's constitutional right, neither are we ready to expand the scope of review in this court to include anything which appellant chooses to argue on appeal. *The grounds of appellant's objection at trial being of a different nature than here urged on appeal, we need not pass on the validity of the argument now presented.*" (emphasis supplied)

See also

*Thomas* v. *State* (1971), 256 Ind. 309, 268 N.E.2d 609; *Hardin* v. *State* (1970), 254 Ind. 56, 257 N.E.2d 671; *Moore* v. *State* (1970), 254 Ind. 23, 256 N.E.2d 907; *Johnson* v. *State* (1969), 252 Ind. 70, 245 N.E.2d 659.

Having decided that Smith's failure to properly object to the admission of evidence allegedly resulting from an unlawful arrest waives the question on appeal, it follows that we also conclude that we will not determine if there was sufficient probable cause for Smith's arrest or if the State's failure to produce the alleged outstanding arrest warrant for a probation violation was proof of the illegality of the arrest. In *Dickens* v. *State* (1970), 254 Ind. 388, 260 N.E.2d 578, 579 Chief Justice Arterburn supplies the reason:

"Even if an arrest is illegal, it has been held that it does not amount to a denial of due process. Further, there is authority for the proposition that an illegal arrest, in itself, in no way affects a judgment of conviction. *People* v. *Rose* (1961), 22 Ill.2d 185, 174 N.E.2d 673. The general rule also being that the jurisdiction of a court over the person of the defendant is not terminated by an illegal arrest. See 22 C.J.S. Criminal Law § 144, p. 382; 96 A.L.R. 982; *State* v. *Wenzel* (1881), 77 Ind. 428. * * *

"* * * Whether the defendant was arrested legally or illegally has no relevance with reference to the proof of the crime itself. In fact, a person may be tried for a crime without ever having been technically arrested if he is in custody and present in court at the time of the trial."

See also,

*Mann* v. *State* (1973), 155 Ind. App. 261, 292 N.E.2d 635, 637-38; *Walker* v. *State* (1974), 261 Ind. 519, 307 N.E.2d 62; *Robinson* v. *State* (1973), 260 Ind. 517, 297 N.E.2d 409; *Shelton* v. *State* (1972), 259 Ind. 559, 290 N.E.2d 47; *Wells* v. *State* (1971), 256 Ind. 161, 267 N.E.2d 371; *Sankey* v. *State* (1973), 157 Ind. App. 627,

301 N.E.2d 235; *Cheeks* v. *State* (1973), 155 Ind. App. 277, 292 N.E.2d 852.

The question of the legality of Smith's arrest in any of its ramifications has been waived.

ISSUE TWO.

CONCLUSION—It is our opinion that the State sufficiently established a complete and unbroken chain of custody of the brown envelope and vial containing heroin capsules found on Smith's person at the time of his arrest; and the trial court did not err in admitting this evidence over his objection.

Strongly suggesting the exact whereabouts of this evidence are these facts:

Mukes seized the heroin capsules from Smith at the time he was placed under arrest, initialed and dated the brown envelope and vial in which the capsules were contained, and retained possession until he deposited the items in the property room lock box.

Caine removed the capsules from the lock box the same day and they remained in his possession at the police crime laboratory until he completed his analysis tests, at which time he took the evidence to the property room narcotics vault on August 11, 1970. It remained there until the date of the trial, June 21, 1971. Caine himself removed the capsules from the vault on the trial date—and also initialed and dated the exhibits, and he alone had the key to the vault.

This Court has recently directed its attention to the subject of chain of custody:

"[T]he State is not required to exclude every remote *possibility* of tampering. Evidence which strongly suggests the exact whereabouts of the exhibit at all times will often be sufficient for chain of custody purposes.

\* \* \*

"The chain of 'possession' is proven if it be demonstrated that there is no reasonable doubt as to the 'continuous whereabouts' of the property (narcotics) and that it remained in an 'undisturbed condition'.

\* \* \*

"While the proof before us is less than ideal, we can find

no missing link in the chain of possession of the narcotic in question nor any evidence or inference of tampering, loss, or mistake with respect to the cellophane package. It was continuously accounted for by positive evidence with reasonable assurance that it arrived in court in an undisturbed condition." *Butler* v. *State* (1972), 154 Ind. App. 361, 289 N.E.2d 772, 777-80.

To the same effect is *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N.E.2d 579, 584:

"'* * * However, *where* as here, the state has introduced *evidence* which *strongly suggests the exact whereabouts of the evidence, the issue becomes one of probabilities.*

"Appellee has cited several cases the holdings of which indicate that all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition its admission is proper and any remaining doubts go to its weight only. See *People* v. *Riser* (1956), 47 Cal.2d 566, 305 P.2d 1; *Breeding* v. *State* (1959), 220 Md. 193, 151 A.2d 743; *State* v. *Baines* (Mo. 1965), 394 S.W.2d 312; *Commonwealth* v. *White* (1967), 353 Mass. 409, 232 N.E.2d 335. We believe such a rule is well grounded in logic and reason. (Emphasis supplied)"

*See also,*

*McMinoway* v. *State* (1972), Ind. App., 283 N.E.2d 553; *Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E.2d 541; *Rose* v. *State* (1972), 258 Ind. 377, 281 N.E.2d 486; *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652.

While the State could not fully explain the presence of an incorrect name on the manila folder containing the exhibits (which was not itself placed into evidence), testimony given by Mukes and Crawley (who also initialed the brown envelope and vial seized from Smith) and testimony by Caine who possessed the sole key to the property room narcotics vault, sufficiently established the "whereabouts" of the evidence, and "strongly suggests . . . that the exhibit[s] . . . passed through the various hands in an undisturbed condition." *Guthrie* v. *State, supra.* This evidence was continuously accounted for "with reasonable assurance that it arrived in court in an undisturbed condition." *Butler* v. *State, supra.*

The conviction of Smith for possession of heroin is accordingly affirmed.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 316 N.E.2d 463.