STEVE LYNCH *v.* STATE OF INDIANA.

[No. 2-474A86. Filed March 6, 1975. Rehearing denied April 10, 1975. Transfer denied June 2, 1975.]

*Edward F. Kelly,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Defendant-Appellant Steve Lynch (Lynch) appeals from a jury conviction for Sale of a Dangerous Drug claiming his arrest was illegal and insufficient evidence.

We affirm.

## FACTS

The facts and evidence most favorable to the State are:

During the first few days in November, 1972, Arah Fisher (Fisher), an informant who had cooperated with the Kokomo Police Department for three years, notified Captain Lynn Rudolph (Rudolph) of the Special Investigation Division that Lynch possessed marijuana at his home.

During the evening of November 4, 1972, and the early morning hours of November 5, 1972, Fisher went to the Lynch residence on three different occasions to purchase marijuana, the last two times with money supplied by Rudolph.

On the third and final "controlled buy" at approximately 2:45 a.m., on the morning of November 5, Rudolph searched Fisher before giving her a $5 and $10 dollar bill from which the serial numbers were recorded. Fisher was driven to the Lynch residence where she knocked on the back door, which was opened by Lynch.

She entered the kitchen, noticed the large number of people in the living room having a party, and then asked Lynch if she could "cop a lid of marijuana". Lynch answered in the affirmative and sold Fisher an ounce of the drug for $15. Fisher paid Lynch with the $15 supplied her by Rudolph.

Several police officers remained in a squad car parked across the street from the Lynch residence and observed Fisher enter the residence.

After ten minutes Fisher exited the house and handed Rudolph the plastic bag. Fisher was searched once again before she departed.

Rudolph immediately performed a Dequanois Levine field test on the substance in the plastic bag and determined it to be marijuana.

While in the process of performing the field test, the police observed Lynch walk from the rear of the premises, spot the squad car parked across the street, and flee in the direction of the back entrance.

A short time later the police entered the house, arrested the occupants, and conducted a general search of the premises.

Lynch was found hiding in the attic . . . and was arrested and searched.

At trial, the court ruled the warrantless search of the premises was illegal and the evidence seized as a result thereof was suppressed. Not suppressed was the marijuana contained in the plastic bag which Lynch had sold to Fisher.

Fisher testified that she had known Lynch personally for several years. Further testimony by Rudolph indicated that her previous tips had led to several arrests for possession or sale of dangerous drugs. Rudolph, however, could not remember any convictions ever resulting from such arrests. Nor did the police ever recover the money (the $5 and $10 bills with the recorded serial numbers) which Fisher used to buy the marijuana.

Lynch presented no evidence in his behalf. The jury found him guilty of the crime charged in the affidavit and the court sentenced him to imprisonment for a period of not less than one nor more than ten years. He appeals.

### ISSUES

Issues raised by Lynch are:

ISSUE ONE. Did the police officers have probable cause to arrest Lynch?

ISSUE TWO. Was there sufficient evidence to sustain Lynch's conviction for the Sale of a Dangerous Drug?

As to ISSUE ONE, Lynch contends that the State neither proved the reliability of the informant nor the extrinsic facts present upon which the police could base probable cause for the arrest.

The State contends that the informant's reliability was proven by the number of arrests obtained from the sixty cases in which Fisher had contributed information. The extrinsic facts present also supplied the police with the necessary probable cause to arrest Lynch.

As to ISSUE TWO, Lynch argues that the failure of the police to recover the $15 supplied to Fisher to make the purchase, together with the State's failure to call as witnesses the other individuals present at the Lynch residence the night of the sale to verify Fisher's testimony, amounts to insufficient evidence.

The State contends that Fisher's testimony, together with the facts surrounding the "controlled sale", supplies more than sufficient evidence upon which the jury verdict can be sustained.

## DECISION

### ISSUE ONE

CONCLUSION—It is our opinion that the illegality of an arrest is pertinent only as to the admissibility of evidence and does not affect the judgment of conviction.

The crux of Lynch's position is that his illegal arrest negates the legality of his conviction.

Numerous Indiana cases uniformly hold to the contrary. The legality of a defendant's arrest is not relevant unless evidence seized as a result thereof is inadmissible due to an illegal arrest. Justice Arterburn, in *Dickens* v. *State* (1970), 254 Ind. 388, 389-90, 260 N.E.2d 578, 579, explained that due process is not denied because of an illegal arrest:

"Even if an arrest is illegal, it has been held that it does not amount to a denial of due process. Further, ... *an illegal arrest, in itself, in no way affects a judgment of conviction.*

"In this case, no motion was made nor issue raised as to the admissibility of any evidence. The appellant made no objection at the trial to the introduction in evidence of the various items when he was apprehended. Whether the defendant was arrested legally or illegally has no relevance with reference to the proof of the crime itself." (Emphasis supplied.)

The same principle has been utilized to strike down the contention that the State must prove as part of its case-in-chief that the defendant's arrest was lawful:

"The legality or illegality of the arrest in question has no bearing on the guilt or innocence of the defendant in this case. *The issue of arrest is pertinent only to the question of the admissibility of the evidence seized in a search incident to that arrest.*" (Emphasis supplied.) *Mann* v. *State* (1973), 155 Ind. App. 261, 264, 292 N.E.2d 635, 637-38.

*See also,*

*Walker* v. *State* (1974), 261 Ind. 519, 307 N.E.2d 62; *Robinson* v. *State* (1973), 260 Ind. 517, 297 N.E.2d 409; *Williams* v. *State* (1973), 261 Ind. 385, 304 N.E.2d 311; *Shelton* v. *State* (1972), 259 Ind. 559, 290 N.E.2d 47; *Bryant* v. *State* (1972), 257 Ind. 679, 278 N.E.2d 576; *Smith* v. *State* (1974), 161 Ind. App. 461, 316 N.E.2d 463; *Cheeks* v. *State* (1973), 155 Ind. App. 277, 292 N.E.2d 852.

The record reveals that the trial court properly suppressed evidence resulting from the illegal search and admitted only the marijuana sold by Lynch to Fisher and delivered to the police prior to Lynch's arrest.

Lynch never objected to the admission of this evidence on the basis of it being inadmissible as a product of a search or seizure incident to an unlawful arrest. So, even assuming his arrest was illegal, no evidence was admitted as a result thereof, and the illegality of the arrest does not affect the validity of the conviction:

"Without passing upon the validity of the arrest, it was of no consequence except insofar as it might have produced evidence at the trial. In that event, such evidence would be

properly suppressed, if the arrest had been illegally made. *The illegality of the arrest, if it was in fact illegal, did not destroy the valid conviction.*" (Emphasis supplied.) *Walker* v. *State, supra* at 522, 307 N.E.2d at 64.

*See also,*

*Wells* v. *State* (1971), 256 Ind. 161, 267 N.E.2d 371; *Sankey* v. *State* (1973), 157 Ind. App. 627, 301 N.E.2d 235; *State* v. *Wenzel* (1881), 77 Ind. 428; *People* v. *Rose* (1961), 22 Ill.2d 185, 174 N.E.2d 673; 22 C.J.S. Criminal Law, § 144, p. 382; 96 A.L.R. 92.

## ISSUE TWO

CONCLUSION—It is our opinion that the evidence is sufficient to sustain Lynch's conviction for Sale of a Dangerous Drug.

Recitation of the facts in this case most favorable to the State obviously demonstrates that there was substantial evidence of probative value to support a conviction for Sale of a Dangerous Drug.

The fact the bills used to make the sale were not recovered is of no particular consequence in view of Lynch's opportunity to destroy the evidence after seeing the patrol car and testimony by Fisher and the three police officers as to the details of the sale.

We will not weigh the evidence nor determine the credibility of witnesses, and the judgment of the trial court entered upon the verdict of the jury is accordingly affirmed.

Sullivan, P.J. and White, J., concur.