EMERY CLARK *v.* STATE OF INDIANA.

[No. 1175S313. Filed August 18, 1976.]

*Jan E. Helbert,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Joseph J. Reiswerg,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of murder in the second degree,[1] for the shotgun slaying of Marshall Hogan. He was sentenced to imprisonment for not less than fifteen (15) nor more than twenty-five (25) years. His appeal charges the following five errors:

---

1. 35-1-54-1 [10-3404]. Murder—Second Degree.—Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned in the state prison during life, or shall be imprisoned in the state prison not less than fifteen [15] nor more than twenty-five [25] years. [Acts 1905, ch. 169, § 350, p. 584; 1969, ch. 95, § 1, p. 214.]

(1) Verdict not sustained by the evidence upon elements of intent, malice and absence of self-defense;

(2) Admission of a shotgun shell into evidence without first establishing its chain of custody;

(3) Admission into evidence of exhibits that tended to establish that the defendant had committed another crime;

(4) Permission to the State to ask leading questions of its own witness upon direct examination, and

(5) Misconduct of the trial judge.

There are conflicts in the testimony, not only between that of State's witnesses and defense witnesses but also between that of witnesses testifying for the same sides. It is undisputed, however, that Hogan was shot while standing outside the building and that the fatal shot was fired from the defendant with a shotgun and through the window of his apartment located upon the second floor of that building. The conflicts concern whether or not Hogan was armed or, if armed, whether or not he had fired his weapon, the number of shots fired, the time interval between shots and the number of trips made by the defendant's companion, Martin, between the entrance to the building and the defendant's apartment.

## ISSUE I

It is not within the province of this Court to reassess conflicting evidence. When the sufficiency of the evidence is raised as an issue upon appeal, this Court will consider only that evidence most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. If such evidence and inferences would permit a reasonable trier of fact to find the existence of each element of the crime charged, beyond a reasonable doubt, the verdict will not be disturbed. *Baum* v. *State*, (1976) 264 Ind. 421, 345 N.E.2d 831; *Dozier* v. *State*, (1976) 264 Ind. 329, 343 N.E.2d 783; *Birkla* v. *State*, (1975) 263 Ind. 37, 323 N.E.2d 645; *Coleman* v. *State*, (1975) 264 Ind. 64, 339 N.E.2d 51; *Wilson* v. *State*, (1973) 259 Ind. 657, 291 N.E.2d 65.

Although in conflict with other evidence, probative evidence and reasonable inferences drawn therefrom disclosed that Hogan had purchased some marijuana at the defendant's apartment and was dissatisfied with its quality. He was determined to get his money back—by force if necessary— and for that purpose, he went to the apartment building in the company of three companions. Two of his companions waited in the automobile while another, Tung, accompanied him to the apartment entrance and one of them rang the doorbell. Access to the apartment was gained through an exterior doorway leading to an inside stairway. Defendant's quarters were at the top of the stairway.

At the time Hogan arrived at the apartment, the defendant and several of his companions were playing cards inside. When the bell rang, the defendant and one of his companions went into a bedroom at the front of the building, looked out the window and saw Hogan and Tung. The companion, Martin, at defendant's instructions, exited from the apartment and went down the stairs to answer the bell. The defendant followed him to the top of the stairway and said, "They're trying to rob me." Martin exited from the building and had a brief conversation with Hogan at the doorway. He then re-entered the building, went upstairs and returned with some marijuana and gave it to Hogan, who did not have a weapon in his hand and did not appear to be armed. The defendant then went back into the bedroom and shot Hogan from the open window with a shotgun. As the shooting occurred, Martin ran up the steps. The defendant appeared at the top of the stairs and said, "I think I shot him" and "I think I got him."

We hold the foregoing evidence sufficient to sustain the conviction of murder in the second degree. There was no question but that the defendant fired upon Hogan intentionally. Further, the defendant was directing Martin's activities, and it is reasonable to believe that he was, therefore apprised by Martin of the purpose of Hogan's visit but was unwilling to accede to his demand. Such

evidence supports an inference of malice. Further, this Court has said on numerous occasions that malice can be inferred from the use of a deadly weapon in a manner reasonably calculated to produce death or great bodily harm; and in such case, the purpose to kill may be inferred from the act of killing. *Chatman* v. *State,* (1975) 263 Ind. 531, 334 N.E.2d 673; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E. 2d 686; *Taylor* v. *State,* (1973) 260 Ind. 264, 295 N.E.2d 600; *Kerns* v. *State,* (1976) 264 Ind. 899, 349 N.E.2d 701.

It was not incumbent upon the defendant to prove that he was acting in self-defense, as it was one of the State's burdens to prove beyond a reasonable doubt that he was not. Nevertheless, the jury was warranted in finding from the foregoing related evidence that the defendant was not so acting.

It is difficult to understand the self-defense argument, as none of the evidence supports it and much of it refutes it. Even the defendant, although he took the stand, gave no testimony that he acted in self-defense. He did testify that Hogan was armed as did Martin. Also, there was testimony supporting his claim that he did not fire the first shot. A handgun had been found near the body of Hogan, where he was found dead in an alley behind the building. Such evidence would have supported a finding that the defendant killed Hogan in defense of Martin, but it did not compel such a finding. The same evidence and inferences that supported a finding that the defendant did not reasonably believe that he was in imminent danger also supported a finding that he did not reasonably believe that Martin was in imminent danger.

## ISSUE II

It is true, as contended by defendant, that the State's Exhibit 25, a shotgun shell, was admitted into evidence improperly, the chain of custody not having been established. However, we deem its admission harmless. Its only effect was to reveal that the unspent shell

had been seen in the defendant's apartment prior to the homicide and that it fit the gun with which Hogan had been shot. The evidence could only tend to show that the defendant had shot Hogan with the shotgun. This fact had been evidenced with other competent and unrefuted testimony—including the defendant's admission—admitted without objection. Evidence erroneously admitted but having the same probative value as other evidence admitted without objection is harmless. *Williams* v. *State,* (1973) 261 Ind. 385, 304 N.E. 2d 311, 316 and cases there cited.

## ISSUE III

Over the defendant's objection of prejudicial irrelevance, the State was permitted to introduce into evidence an item identified as a "contraption used for marijuana smoking," a package of cigarette papers and a small set of scales. The testimony of the witness who identified such exhibits was that they had been used at the apartment in connection with the sale and smoking of marijuana. Although such evidence disclosed other criminal activity and would have been inadmissible if that were its only utility, it supported the State's theory that the premises were used as a situs for the sale of marijuana and that Hogan had gone there to complain about such merchandise. In this respect, the exhibits were relevant and competent, notwithstanding that they coincidently disclosed criminal activity for which the defendant was not on trial. *Thomas* v. *State,* (1975) 263 Ind. 198, 328 N.E.2d 212.

## ISSUE IV

After interrogating its witness, Martin, at some length the State requested and, over the defendant's objection, received permission to ask leading questions of him as a hostile witness. Ind. R. Tr. P. 43 (B) authorizes interrogation of a hostile witness by leading questions and a trial judge's determination of the propriety of such questions is reviewable only for clear error. *Shipman* v.

*State,* (1962) 243 Ind. 245, 183 N.E.2d 823. The witness had previously disclosed that the defendant was a good friend, that he would like to see the defendant found innocent, and that he was "pretty much" on the defendant's side. In view of these disclosures, we see no error in the trial judge's ruling.

## ISSUE V

As Detective Campbell, a State's witness, left the witness stand, the judge advised him that he was wanted elsewhere to make an investigation. This occurred in the presence of the jury, and in the process, the judge stated that there had been "another murder." This assignment of error appears for the first time by way of the defendant's brief, and for this reason alone, it is not reviewable. *Pinkerton* v. *State,* (1972) 258 Ind. 610, 283 N.E.2d 376; *Webb* v. *State,* (1972) 259 Ind. 101, 284 N.E.2d 812; *James* v. *State,* (1974) 261 Ind. 495, 307 N.E.2d 59. The error complained of does not fall into the category of "fundamental error," and we, therefore decline to treat it in depth. The judge's choice of words was unfortunate and undoubtedly he would have admonished the jury to disregard them, had he been so requested, which he was not. Even so we do not believe the remark prejudiced the defense.

We find no harmful error, and the judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 352 N.E.2d 762.