Terry W. PURCELL, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 3–1179A317.

Court of Appeals of Indiana,
Third District.

July 16, 1980.

Terry E. Johnston, Valparaiso, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Terry W. Purcell was charged with theft[1] and found guilty by a jury of the lesser included offense of conversion.[2] The trial court sentenced Purcell to the Indiana Department of Correction for one year. Purcell urges the following issues for our review:

(1) With respect to the admission of certain testimony, whether the trial court erred for the following reasons:

 a. Suppressed evidence was admitted for the purpose of impeachment;

 b. The trial court did not admonish the jury concerning the purpose of the impeachment testimony;

 c. Whether the legality of Purcell's arrest required suppression of the evidence derived therefrom; and,

 d. Insufficient foundation was laid for the admission of impeachment testimony;

(2) Whether there was sufficient evidence before the trial court to declare a witness hostile;

(3) Whether the crime charged was in effect upon the date of Purcell's arrest;

(4) Whether there was sufficient prosecutive merit to waive Purcell from juvenile court; and,

(5) Whether the jury selection process was in error.

We affirm.

### I.

### Facts

The following evidence was presented at trial. Paul Allen's gray 1975 Kawasaki motorcycle was chained to the house trailer of Albert Huffman on July 28, 1978. The following morning (July 29, 1978) Huffman discovered the chain cut and the motorcycle missing. At 1:30 a. m. on August 5, 1978, officer Zostik—though not on duty nor in uniform—was riding in a marked police car driven by officer Basista who was on duty and in uniform. Officers Basista and Zostik worked for the Lake Station Police Department in the city of Lake Station located in Lake County, Indiana. Officer Zostik testified that he observed a motorcycle traveling at a very high rate of speed and that he and officer Basista followed and caught up with the motorcycle at a stop light in Lake Station. Officer Zostik observed that the motorcycle was being ridden by two teenagers and that the driver was wearing a brown leather jacket and blue jeans whereas the passenger wore a light colored shirt or jacket.

When the light turned from red to green officer Basista engaged his emergency overhead lights. The motorcycle's lights were extinguished and the motorcycle accelerated at a very high rate of speed. Officers Basista and Zostik gave pursuit—with red lights flashing and siren engaged—reaching speeds in excess of ninety miles per hour. As the pursuit approached the Porter County line, officer Basista radioed ahead to notify the Portage police of their imminent entry into the jurisdiction of the Portage police. Eventually, the motorcycle pulled into a gravel parking lot with officers Basista and Zostik in close pursuit. The motorcycle slowed and the passenger jumped off making good his escape on foot. At this point the motorcycle nearly fell and officer Zostik exited the squad car, pulled the driver off the motorcycle, placed the driver face down and advised him of his arrest. Officer Zostik testified that as he pulled the driver off the motorcycle the driver stated "You have got me" or "I give up." Purcell was wearing a brown leather jacket and blue jeans.

The arrest as well as part of the pursuit occurred in Porter County. After the arrival of Portage police, the driver was identified as the defendant—Terry W. Purcell, a juvenile being under the age of eighteen—and the motorcycle was identified as the stolen gray 1975 Kawasaki belonging to Paul Allen. Purcell was taken to the Portage Police Department, charged with theft and incarcerated.

---

1. IC 35–43–4–2 (Burns Code Ed.) (amended 1979).

2. IC 35–43–4–3 (Burns Code Ed.).

That same morning, August 5, 1978, at 9:00 a. m., officer Untch—assigned to the juvenile division of the Portage Police Department—took Purcell from the jail portion to the booking room portion of the Portage City jail. Shortly thereafter, Purcell made a statement that would later contradict his testimony at trial. The essence of his statement was that he was not driving the motorcycle but had been picked up while hitchhiking and that he did not know who the driver was. He shortly thereafter stated that the driver's name was Larry. Since officer Untch violated the clear mandates of *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138,[3] the trial court, at a suppression hearing, ruled that evidence with respect to this statement would be suppressed. The trial court specifically ruled at the same hearing however, that the statement could be used for the purpose of impeachment.

At his trial Purcell took the stand and testified that he was merely the passenger on the motorcycle without knowledge of it being a stolen vehicle and that it was the driver who jumped off the motorcycle and escaped. Over Purcell's objection officer Untch took the stand for the purpose of impeaching Purcell's testimony and related the contents of Purcell's interrogation statement—the one previously ruled to be suppressed except for the purpose of impeachment. The jury found Purcell guilty of conversion and the trial court set his sentence at one year.

## II.

### Admission of Testimony

Purcell argues that the trial court erred with respect to the admission of certain testimony by officers Untch and Zostik. Purcell urges this Court to find reversible error in four separate contexts.

### A.

### Suppressed Evidence Used for Impeachment

Purcell contends that the trial court erred in allowing the suppressed evidence of Purcell's interrogation statement to be admitted through the vehicle of impeaching testimony by officer Untch. Purcell's statement made to officer Untch was suppressed in the State's case in chief because such statement was received in clear violation of the mandates of *Lewis, supra.*

In *Lewis*, the Indiana Supreme Court addressed the issue of the so-called *Miranda* rights (*see Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) as applied to the custodial interrogation of juveniles. The purpose of outlining such procedures was stated, in pertinent part, as follows:

"The authorities seeking to question a juvenile enter into an area of doubt and confusion when the child appears to waive his rights to counsel and against self-incrimination. They are faced with the possibility of taking a statement from him only to have a court later find that his age and the surrounding circumstances precluded the child from making a valid waiver. There are no concrete guidelines for the authorities to follow in order to insure that the waiver will be upheld. The police are forced to speculate as to whether the law will judge this accused juvenile on the same plane as an adult in regard to the waiver of his constitutional rights, or whether the court will take cognizance of the age of the child and apply different standards.

\* \* \* \* \* \*

"Clearly defined procedures should be established in areas which lend themselves to such standards in order to assure both efficient police procedure and protection

3. The Court in *Lewis*, in pertinent part, stated:
 "We hold therefore that a juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to

remain silent. Furthermore, the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights."
259 Ind. at 439, 288 N.E.2d at 142.

of the important constitutional rights of the accused. . . . "

259 Ind. at 436–37, 288 N.E.2d at 141. The Court then proceeded to outline the procedures required of police in interrogating juveniles. *See* note 3, *supra*. *Lewis* prescribes in effect, therefore, the procedures to be used by police in implementing the *Miranda rights* to juveniles with respect to custodial interrogation. *See, Lewis, supra.*

■ It is a well established rule in the federal courts, *Harris v. New York* (1971), 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, and in the Indiana courts, *Johnson v. State* (1972), 258 Ind. 683, 284 N.E.2d 517, that statements inadmissible under *Miranda* in the prosecutor's case in chief may be used for the purpose of impeaching the credibility of the defendant's trial testimony. In *Harris, supra*, the petitioner's statement made in contravention of *Miranda* was suppressed in the prosecutor's case in chief but was admitted for the purpose of impeaching petitioner's trial testimony. As stated by the United States Supreme Court in *Harris*:

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury . . . Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.

. . .

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."

401 U.S. at 225–26, 91 S.Ct. at 645–46.

■ Although not previously decided in this state, we feel the same reasoning should be adopted where the procedures outlined in *Lewis* are not followed. That is, statements obtained in contravention of the

mandates of *Lewis* cannot be used in the prosecutor's case in chief. If the juvenile defendant chooses to take the stand and testify, however, he does so with the risk of confrontation with any prior inconsistent statements including statements received in violation of the *Lewis* procedures. We therefore affirm the trial court's ruling with respect to the admissibility of the impeaching testimony of officer Untch.

B.

Admonishment of Jury

Purcell further argues that the trial court failed to admonish the jury with respect to officer Untch's impeaching testimony. Purcell contends it was reversible error for the trial court to fail to inform the jury at the time officer Untch testified that his testimony was to be considered solely for the purpose of weighing Purcell's credibility.

■ Whether to admonish the jury is within the trial court's discretion and reversible error will be found only where the defendant demonstrates that the trial court's failure to admonish the jury placed the defendant in a position of grave peril. *Marsh v. State* (1979), Ind., 393 N.E.2d 757. *See also, Adler v. State* (1961), 242 Ind. 9, 175 N.E.2d 358. We note that officer Untch's testimony was properly admitted and that we are not confronted with error in the presentation of evidence where the admonishment of the jury would be the normal procedure. *See, e. g., Bell v. State* (1977), 267 Ind. 1, 366 N.E.2d 1156; *Stacker v. State* (1976), 264 Ind. 692, 348 N.E.2d 648; *Caine v. State* (1975), 163 Ind.App. 381, 324 N.E.2d 525. Although the better procedure might have been to inform the jury of the limited purpose of officer Untch's testimony, the failure to do so cannot be considered an abuse of the trial court's discretion which placed Purcell in a position of grave peril.

Assuming, however, that some error was committed by the court's failure to admonish the jury, such error was cured by the following jury instruction:

## "DEFENDANT'S INSTRUCTION NO. 7

"There has been evidence introduced that the defendant, Terry Purcell may have made prior statements which were inconsistent or contradictory to his sworn testimony in court. The defendant's prior statements were ruled as inadmissible as evidence against the defendant. The Court has ruled that said statements may be used to show that the defendant Terry Purcell may have made a prior inconsistent statement so that the jury may weigh the defendant's credibility and the prior statements are not to be considered as evidence of the defendant's guilt."

Upon appeal this Court will presume that the jury obeyed the court's instruction in reaching its verdict and that any error which may have occurred with respect to the trial court's failure to admonish the jury was cured by such instruction. *Tyson v. State* (1979), Ind., 386 N.E.2d 1185.

### C.

### Legality of Arrest

Purcell further argues that his arrest was illegal and that the testimony of officers Untch and Zostik should have been suppressed. Although somewhat lacking in clarity, Purcell's brief seems to argue that the arresting officer's testimony (officer Zostik) concerning the arrest and the events immediately preceding thereto should have been suppressed and that the interrogating officer's testimony (officer Untch) concerning Purcell's suppressed statement—the alleged "fruit" of the illegal arrest—should also have been suppressed. Assuming, without deciding, that the arrest of Purcell was illegal,[4] the admission of the testimony of officers Untch and Zostik was not error.

■ First, as previously examined, the evidence of Purcell's interrogation statement was suppressed. The real issue is, therefore, whether such evidence could be used to impeach Purcell. It is well to realize at this point that evidence obtained in

violation of the fifth amendment—although suppressed in the prosecutor's case in chief—may be used to impeach the defendant's trial testimony. *See*, discussion in Part II. A., *supra; Harris v. New York, supra; Johnson v. State, supra.* Here, however, we are concerned with a fourth amendment "seizure" and the alleged illegal fruit thereof. The issue of whether such tainted fruit may be used for impeachment purposes was recently answered in the affirmative by the Indiana Supreme Court in *Maciejack v. State* (1980), Ind., 404 N.E.2d 7:

"Evidence, though illegally obtained, may nevertheless be used for impeachment purposes. *Walder v. United States*, (1954) 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503; *Jacks v. State*, (1979) Ind., 394 N.E.2d 166; *Johnson v. State*, (1976) 258 Ind. 683, 284 N.E.2d 517. 'It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction [of] his untruths. Such an extension of the *Weeks [v. U. S.*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652] doctrine would be a perversion of the Fourth Amendment.' *Walder v. United States, supra*, at 65, 74 S.Ct. at 356, 98 L.Ed. at 507."

Thus, the trial court did not err in admitting officer Untch's testimony for the purpose of impeachment of Purcell's trial testimony.

■ With respect to officer Zostik's testimony, the legality of the arrest does not affect the admissibility of the arresting officer's testimony. Upon a motion similar to Purcell's motion to suppress all testimony due to an allegedly illegal arrest, the Indiana Supreme Court stated:

"Without passing upon the validity of the arrest, it was of no consequence except

4. Purcell contends that his arrest by officer Zostik was illegal because at the time of his arrest officer Zostik was outside of his jurisdic-

tional authority (city of Lake Station), and because officer Zostik was not in uniform (*see*, IC 9-4-8-1 (Burns Code Ed.)).

insofar as it might have produced evidence at the trial. In that event, such evidence would be properly suppressed, if the arrest had been illegally made. The illegality of the arrest, if it was in fact illegal, did not destroy the valid conviction. . . . "

*Walker v. State* (1974), 261 Ind. 519, 522, 307 N.E.2d 62, 64. Purcell's arrest produced no evidence at the trial since officer Zostik's testimony concerned only the events immediately preceding and contemporaneous with the arrest. Faced with an analogous situation, Judge Sullivan stated:

"In the case before us, the incriminating evidence given by the arresting officer, both at trial and at the post-conviction hearing, concerned his sensory perceptions prior to and contemporaneous with the arrest. Such testimony was not inadmissible. It was not evidence obtained *as a result* of the arrest. *See, Williams v. State* (1973), Ind., 304 N.E.2d 311."

*Kissinger v. State* (1974), 161 Ind.App. 303, 308–309, 315 N.E.2d 423, 427. The trial court therefore properly admitted officer Zostik's testimony.

### D.

#### Foundation for Impeachment

Finally, Purcell contends that the trial court erred in allowing officer Untch to testify with respect to the contents of Purcell's suppressed statement. Purcell alleges, correctly, that the prosecutor failed to lay sufficient foundation for the purpose of introducing the impeaching testimony.

 As stated in *Anderson v. State* (1977), 267 Ind. 289, 297, 370 N.E.2d 318, 322:

"When a witness is to be impeached, a proper foundation must first be laid. This is accomplished by bringing to the witness' attention the circumstances under which the contradictory statements were made. *Gradison v. State* (1973), 260 Ind. 688, 300 N.E.2d 67; *Carter v. State* (1976), Ind.App., 353 N.E.2d 495, 498, and cases cited therein. . . . "

Upon cross examination of Purcell by the prosecutor, the following colloquy took place:

"Q Terry, after you were arrested, did you at any time talk to Larry Lucas about this incident?

"A What do you mean?

"Q After you were arrested in August, was there ever a time when Larry Lucas came and talked to you about what had happened?

"A It's just when he came up to our house and that was it.

* * * * * *

"Q Have you ever talked to anyone else about this case?

"A No, I haven't.

"Q Have you even talked to Pat Drake?

"A No, I haven't.

"Q You have kept everything pretty much to yourself—

"A Yes, I have.

"Q —since August of 1978?

"A Yes, I have."

Thereafter, the prosecutor introduced officer Untch for the purpose of impeaching Purcell's testimony. Over Purcell's objection, officer Untch testified to the contents of the suppressed statement.

The transparent intent of the prosecutor's questioning was not to bring Purcell's attention to his prior inconsistent statement—but was, in fact, just the opposite. For the trial court to allow the prosecutor to introduce this tainted evidence without requiring the prosecutor to bring to Purcell's attention the statements made to officer Untch in the booking room portion of the Portage City jail on the morning following his arrest was, assuredly, error.

Although clearly error, the issue here is whether the trial court's error was harmless. Faced with a similar issue, our Supreme Court stated in *Davis v. State* (1968), 251 Ind. 133, 139–40, 239 N.E.2d 601, 605:

"We believe that the question of whether or not reversible error results because of the admission of incompetent evidence or whether or not such errors are harmless and do not prejudice the rights of the

defendant depends upon the total tenor of the situation in which they arise. Any rational application of the general rules of evidence necessitates a case to case, factual situation approach."

Further, Ind. Rules of Procedure, Appellate Rule 15(E) commands this Court, in part:

"[N]or shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."

Here we are faced with strong evidence of Purcell being in possession of stolen property on the one hand with testimony erroneously admitted reflecting adversely upon the credibility of Purcell on the other hand. Addressing an analogous harmless error question, this Court recently made the following analysis:

"[I]f the weight of properly admitted evidence is overwhelming and, by comparison, the prejudicial effect of the inadmissible evidence is insignificant, the error may be deemed harmless. The inquiry is directed to the probable prejudicial impact of the inadmissible evidence on the minds of an average jury—if the evidence had been suppressed, yet a reviewing court has no reasonable doubt that the jury would have reached the same result, the error is harmless."

*Gilman v. State* (1979), Ind.App., 389 N.E.2d 327, 331. Upon a review of the record as a whole, we cannot say that this case was unfairly tried nor that the probable prejudicial impact of the erroneously admitted evidence was such that it would have changed the result reached by the jury. We therefore find the trial court's error to be harmless.

### III.

### Hostile Witness

 Purcell argues that the trial court erred in declaring Pat Drake a hostile witness and allowing the State to interrogate her by the use of leading questions. In *Clark v. State* (1976), 265 Ind. 161, 166–67, 352 N.E.2d 762, 766, the Court stated:

"After interrogating its witness, Martin, at some length the State requested and, over the defendant's objection, received permission to ask leading questions of him as a hostile witness. Ind.R.Tr.P. 43(B) authorizes interrogation of a hostile witness by leading questions and a trial judge's determination of the propriety of such questions is reviewable only for clear error. *Shipman v. State*, (1962) 243 Ind. 245, 183 N.E.2d 823. The witness had previously disclosed that the defendant was a good friend, that he would like to see the defendant found innocent, and that he was 'pretty much' on the defendant's side. In view of these disclosures, we see no error in the trial judge's ruling."

Prior to the trial court declaring her a hostile witness, Pat Drake testified on direct examination that she had lived with Purcell, that she was a good friend of Purcell, and that she would like to see Purcell found not guilty. The trial court did not commit clear error in declaring Pat Drake as a hostile witness.

### IV.

### Crime in Effect

 Next, Purcell argues that he was charged with and prosecuted for a crime which did not exist, that "the receiving, retaining or disposing of property of another person that has been the subject of theft was not a crime in August, 1978. . . . " Purcell is clearly in error.

Purcell was charged with theft as follows:

"[Purcell] knowingly or intentionally exerted unauthorized control over property of another, to-wit: one Gray 1975 Kawaski [*sic*] Motorcycle bearing serial number Z1F59543 and 1978 Indiana motorcycle place [*sic*] number 143742; said motorcycle being the property of one, Paul Allen, with intent to deprive the said Paul Allen of its value or use. . . . "

The statutory provision for theft—with which Purcell was charged and prosecuted—in August of 1978 was IC 35–43–4–2 (Burns Code Ed.) (amended 1979) and read in total:

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony."

In amending this section in 1979, the Legislature left the above quoted "1978 version" intact—labelling it section "(a)"—and then added section (b) which states:

"(b) A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a class D felony."

Purcell argues that this legislative addition created a new crime and that: "The logical and legal implication to the foregoing is that the receiving, retaining or disposing of property of another person that has been the subject of theft was not a crime in August, 1978." Whether valid, this argument is not relevant. Purcell was not charged with "receiving, retaining or disposing" of the motorcycle, but was charged and prosecuted for knowingly or intentionally exerting unauthorized control over the motorcycle. Purcell's argument also ignores the clear and unambiguous language of IC 35–43–4–2 as it existed in its "1978 version". We reject Purcell's argument *in toto.*

"A penal statute must be strictly construed against the State, but a statute should not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the expressed intent of the legislature."

*State v. Bigbee* (1973), 260 Ind. 90, 93, 292 N.E.2d 609, 611. That Purcell was charged and prosecuted for a crime which did exist in August of 1978 is too clear to give further consideration.

## V.

### Waiver from Juvenile Court

■ Without citation to authority and without any legal analysis, Purcell offers a very novel argument. He argues that his conviction of the lesser included offense of conversion rather than his being convicted of theft necessarily compels the conclusion that there was not specific prosecutive merit of the charged offense for waiver from the juvenile court.

IC 31–5–7–14 (Burns Code Ed., Supp. 1979) provides in pertinent part:

"(a) Whenever a child fourteen [14] years of age or older is charged with committing an act which would amount to a crime if committed by an adult, the court, upon motion by the prosecuting attorney and after full investigation and hearing, may waive jurisdiction and order the child held for trial under the regular procedure of the court which would have jurisdiction of the act if committed by an adult, if the court finds that there is probable cause to believe that the case has specific prosecutive merit, that the child is beyond rehabilitation under the regular statutory juvenile system, that it is in the best interest of public welfare and security he stand trial as an adult, and that the act charged is either:

"(1) Heinous or of an aggravated character (greater weight being given to offenses against the person than to offenses against property); or

"(2) Part of a repetitive pattern of acts, even though less serious in nature."

Purcell seems to argue that since he was waived out of juvenile court on a felony charge, but was not convicted of such felony, that it follows there was no specific prosecutive merit, in fact, for waiver.

Such an argument does not follow the statute. IC 31–5–7–14, *id.,* only requires that there be probable cause that the "case" has prosecutive merit. "Case" necessarily refers to the earlier phrase in the statute of "an act which would amount to a crime if committed by an adult." We find that the jury's determination of the defendant's guilt of a lesser included offense—directly contrary to Purcell's position—necessarily supports the juvenile court's determination that the "case" have prosecutive merit and affirm the court's waiver.

## VI.

### Jury Selection

■ Finally, Purcell contends that the process of selection of the jury panel in Porter County violates Indiana statutory and case law as well as violating the constitutional requirements "of a fair cross section" of the population under the sixth and fourteenth amendments as interpreted by the United States Supreme Court.

The record clearly shows that the jury panel in Porter County is selected solely from the real property tax records and schedules of the county. A similar challenge to the Porter county jury selection process was recently met in *Bond v. State* (1980), Ind., 403 N.E.2d 812, 816:

"The defendant next assigns as error the manner in which the jury was selected. He contends that the court erred in selecting potential jurors from the property tax roles, since all individuals who do not own property in Porter County were thus excluded. In *Taylor v. State*, (1973) 260 Ind. 264, 295 N.E.2d 600, we held at p. 271, 295 N.E.2d at p. 605 that:

'The use of lists, whether they be property taxpayers or registered voters, so long as they represent a reasonable cross section of the people of the county, cannot be said to violate the rights of the accused, in the absence of a showing that such use is made in a deliberate attempt to exclude certain groups from jury selection.'

"The defendant has made no attempt to show that any particular groups were deliberately excluded from jury selection. We therefore, find no error in the method in which the jurors were initially called to serve."

As in *Bond*, Purcell has made no attempt to show that any particular group or groups were deliberately excluded from the jury selection process. Other than Purcell's self-serving statements, there is not the first jot of evidence to support any contention that a group was excluded.

The United States Supreme Court recently stated the proper test for establishing a prima facie violation:

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*Duren v. Missouri* (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579. In *Duren*, the defendant established by statistical evidence each of the three elements of the three part test laid down by the Court. In the present case, however, Purcell failed to produce any evidence which would establish any of the three elements of the *Duren* test. Therefore, Purcell's final allegation of error must also fail.

We affirm Purcell's conviction upon all issues raised.

GARRARD, P. J., and HOFFMAN, J., concur.