Freddy SCOTT, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–9303–CR–118.

Court of Appeals of Indiana,
Third District.

April 13, 1994.

Daniel J. Pfleging, Christian, Waltz, White, Klotz & Pfleging, Noblesville, for appellant.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

GARRARD, Judge.

Freddy Scott, Jr. (Scott) appeals his conviction for Battery, as a Class C felony.[1]

FACTS

The facts most favorable to the judgment reveal that on the night of April 8, 1991, Gilbert Larry Pryor (Pryor) was at a tavern in Noblesville, Indiana. Pryor had been at the bar since approximately 4:00 that afternoon, and he had consumed a significant amount of alcohol. While at the bar, he met Scott and Randall Price (Price), who were both drinking as well, and the three men began talking.

Just before midnight, Scott and Price agreed to give Pryor a ride home, and the three men left the bar together. After getting into a van, Scott and Price told Pryor that they were first going to smoke some marijuana, and then they would take Pryor home. Scott drove out to Potter's Bridge, over the White River, and Pryor got out of the van. At this point, both Scott and Price began to hit Pryor, and Pryor was eventually knocked unconscious.

When he regained consciousness, Pryor was lying in shallow water in the river. He crawled to a nearby house and managed to

---

1. The crime of Battery is defined by Ind.Code § 35–42–2–1:

 A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is:

 a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon.

 IC 35–42–2–1(a)(3).

get inside the door before again passing out. That morning the resident of the house, Charles Brouse (Brouse), discovered Pryor and called the police. Pryor was taken to Riverview Hospital, where he was treated for severe injuries to his face, in addition to multiple lacerations on his arms and chest, a nasal fracture and fractured ribs. Pryor required surgery to repair several lacerations on his face, and he was hospitalized for three days.

Scott was charged with one count of Battery, as a Class C felony, and one count of Robbery, as a Class A felony. The robbery count was dismissed at the end of the state's case-in-chief. The jury returned a verdict of guilty on the battery charge, and Scott has timely appealed.

ISSUES AND DISCUSSION

Scott raises several issues for our consideration on appeal, which we consolidate as follows:

I. Whether the admission of several photographs and items of physical evidence constituted reversible error.

II. Whether the trial court erred in admitting a statement which Scott gave to the police.

III. Whether the trial court erred in denying Scott's motion for judgment on the evidence as to the charge of battery.

IV. Whether Scott was denied effective assistance of counsel.

V. Whether the trial court erred in ordering Scott's sentence to be consecutive to any violation of probation imposed.

ISSUE I

Scott argues that the admission of numerous exhibits over the course of the trial constituted reversible error.

Scott objected to the following items of evidence which were subsequently admitted at trial: exhibits 16, 17, 18 and 19 (photographs of blood stains on the roadway); exhibit 20 (photograph of a button and two quarters near the roadway); exhibit 21 (photograph of scuffed spot in dirt near the road-

way); exhibit 22 (photograph of the ground near the roadway, including sunglasses and a ten dollar bill); exhibit 25 (two quarters); exhibit 26 (a button); exhibit 28 (a ten dollar bill); exhibit 29 (hair); exhibit 30 (four quarters); exhibit 31 (a button and a rock); exhibit 32 (part of a tooth); and exhibit 38 (Scott's tennis shoes).

Scott maintains that the state did not lay a proper foundation for the admission of any of these exhibits and that the exhibits were not relevant or material as to any issue and resulted in prejudice constituting reversible error.

The admission of photographic evidence is within the discretion of the trial court and reversal will occur only upon a showing of an abuse of discretion. *Jackson v. State* (1992), Ind., 597 N.E.2d 950, 963. Once it is established that a photograph is an accurate depiction of that which it is intended to portray, its admissibility turns on the question of relevancy. *Baird v. State* (1992), Ind., 604 N.E.2d 1170, 1189. Photographs of a crime scene are generally admissible because they are competent and relevant aids by which the jury can orient itself to best understand the evidence presented. *Wethington v. State* (1990), Ind., 560 N.E.2d 496, 506 (citation omitted).

Here, we find no error in the admission of exhibits 16–22, all photographs of the crime scene. The photographs were identified by the investigating officer as accurately depicting the crime area. The investigation occurred a few hours after the attack, and the police officer testified as to his investigation of the crime scene. Pryor testified that he was bleeding at the accident scene. Further, he stated that he left the bar with ten to twelve dollars, in addition to several quarters, and that these items were all missing after the incident. Pryor also positively identified his sunglasses, and testified that his buttoned shirt was missing after the attack. These photographs were clearly relevant in corroborating the police officer's testimony regarding his investigation and Pryor's testimony as to how and where the attack occurred and were properly admitted.

Scott argues that these photographs were inadmissible because there was no evidence establishing that the blood depicted was in fact Pryor's blood, or that the money and button shown in the photographs in fact belonged to Pryor. In *Lamotte v. State* (1986), Ind., 495 N.E.2d 729, a photograph depicting red spots on parking lot pavement at the crime scene was admitted over the defendant's objection that there was no testimony establishing that the red spots were the victim's blood. The supreme court held that the photographs corroborated the testimony of the victim, who stated that he bled onto the pavement, and the investigating officer, who indicated that he had observed the blood spots at the accident scene. *Id.* at 733. Similarly, in this case the photographs were an aid to the jury in both depicting the accident scene and in corroborating the testimony of witnesses.

▮ Scott also objected to the admission of several items of physical evidence, including shirt buttons, quarters, a ten dollar bill, hair, a tooth and tennis shoes. An adequate foundation for the admission of an item of physical evidence involves two showings. First, the witness who observed the particular instrumentality must be able to at least state that the item shown is "like" the one associated with the crime. Second, there must be a showing that the item is connected to the defendant and the commission of the crime. *Andrews v. State* (1989), Ind., 532 N.E.2d 1159, 1162-63; *Oglesby v. State* (1987), Ind., 513 N.E.2d 638, 640. However, the physical evidence need only constitute a small but legitimate link in the chain of evidence connecting the defendant with the crime. *Hudson v. State* (1986), Ind., 496 N.E.2d 1286, 1296. The trial court need not require absolute identification of an exhibit; admission may be proper even where there is only a slight tendency to connect the defendant with the offense. *Sons v. State* (1987), Ind., 502 N.E.2d 1331, 1332. Where the witness is unable to say for certain the object

he is shown at trial is the same instrumentality associated with the crime, such consideration goes only to the weight of the evidence and not its admissibility. *Oglesby*, 513 N.E.2d at 640.

We find this case to be similar to *Underwood v. State* (1989), Ind., 535 N.E.2d 507, where the defendant objected to the admission of several items found at the scene of an assault, including the victim's blue jeans, boots, shirt, some coins, a lighter, and a can of beer. There was testimony from an individual involved in the crime that the defendant had removed the victim's clothes and robbed him. The court held that the exhibits were properly admitted because they were relevant to the determination of where and how the victim was killed and they corroborated the witness's testimony. *Id.* at 517.

In the case at bar, Pryor's testimony indicated that he had possession of items similar to those discovered at the crime scene prior to the beating. Pryor testified that he was taken to Potter's Bridge, where he was then beaten by two men. He stated that when he left the bar he had coins and money in his pocket, and after the assault these items were missing. Pryor also testified that he lost two teeth on the night of the attack, and that he lost his shirt before arriving at Brouse's house. Brouse observed that part of Pryor's hair had been ripped out, and the scratches on Pryor's chest indicated the possibility of contact with the barbed-wire fence where the hair was discovered. The money, buttons, hair and tooth were properly admitted because they corroborated Pryor's testimony as to where and how he was assaulted.

▮ Scott raises his strongest objection to the admission of exhibit 38, his tennis shoes, arguing that there was no evidence connecting the shoes to him on the night of the incident, that there was no analysis of the "red spots" on the shoes, and that there was no appropriate chain of custody.[2] In Scott's

---

2. With regard to Scott's argument regarding the state's failure to establish an appropriate chain of custody for the tennis shoes, we deem it to be without merit. While the state has a responsibility to show a proper chain of custody for an exhibit, when an item is non-fungible and readily

identifiable it may be admitted based upon the testimony of the witness that it is recognized and in a substantially unchanged state. *Trotter v. State* (1990), Ind., 559 N.E.2d 585, 591. Here, the tennis shoes were readily identifiable, and the police officer identified the shoes as the ones

statement to the police he admitted that these were the shoes he wore on the night of the attack and that the "red spots" on the shoes were actually blood from the victim. This testimony was clearly sufficient to allow admission of the shoes into evidence.[3]

## ISSUE II

Scott next contends that the admission of his statement given to police was in error because the state failed to establish a corpus delicti.[4]

▮▮▮▮ To admit a confession into evidence, the corpus delicti of the crime must be established by independent evidence of the occurrence of the specific kind of injury and someone's criminal act as the cause of the ` injury. *Willoughby v. State* (1990), Ind., 552 N.E.2d 462, 466. The corpus delicti rule arose from judicial hesitancy to accept without adequate corroboration a defendant's out-of-court confession of criminal activity. *Id.* However, this rule does not require that the defendant be connected to the crime for the statement to be admissible; all that is required is independent evidence that a crime has occurred. *Id.; Harkrader v. State* (1990), Ind.App., 553 N.E.2d 1231, 1233, *trans. denied.*

Thus, Scott's argument that the state failed to present any independent evidence placing him at the scene of the crime affords him no relief. Pryor testified that he was hit by Price, and overwhelming evidence showed that he was severely injured. When Pryor regained consciousness at Brouse's home after the beating, he told Brouse that two men had beat him up. The physical evidence found by police at the crime scene supported

Pryor's testimony that he had been the victim of a battery. Finally, the doctor testified that Pryor's injuries were entirely consistent with a beating. This evidence clearly established a corpus delicti sufficient to support the admission of Scott's statement to police.

## ISSUE III

Scott next argues that the trial court erred in denying his motion to dismiss the battery charge against him.

▮▮▮▮ A defendant's motion for judgment on the evidence should be granted only in instances where there is a total absence of evidence on some essential element or where the evidence is without conflict and susceptible to only one inference in favor of the accused. *Lee v. State* (1991), Ind.App., 569 N.E.2d 717, 720, *reh. denied, trans. denied.*

The elements of battery as a class C felony are knowingly or intentionally touching another in a rude, insolent or angry manner resulting in serious bodily injury. In Scott's statement to police he admitted hitting Pryor "probably two or three times" in the jaw. In addition to the physical evidence corroborating Pryor's version of the beating, the emergency room physician testified as to the severity of Pryor's injuries, which required surgery and three days hospitalization. Clearly, from this evidence the jury could reasonably infer that Scott had touched Pryor in a rude, insolent or angry manner and that Pryor suffered serious bodily injury. We find no error in the denial of Scott's motion for judgment on the evidence.

## ISSUE IV

Scott further maintains that he was denied

---

taken from the defendant. We find no error in their admission.

**3.** Scott argues separately that he was prejudiced by the failure of the court to properly admonish the jury on three occasions regarding the characterization of "red spots" as blood.

Reversible error will be found in a trial court's failure to admonish the jury only when such failure placed the defendant in a position of grave peril. *Purcell v. State* (1980), Ind.App., 406 N.E.2d 1255, 1259. While we agree with Scott that the trial judge, by merely stating "so ordered" in response to Scott's motion for admonishment, failed to properly admonish the

jury, we cannot say that Scott was placed in a position of grave peril. Pryor testified that he was bleeding at the scene of the crime, and Scott's own statement admitted that the "red spots" on his shoes were in fact the blood of the victim. We find no reversible error.

**4.** While Scott also objected to the admission of his statement on other grounds, at trial, including that the statement impeached a witness for the state, Pryor, that the statement was irrelevant and that one copy of the statement contained deletions, his brief addresses only the issue of failure to establish a corpus delicti; therefore, we limit our discussion to this issue.

effective assistance of counsel at trial.[5] We find no merit to his argument.

 In making a claim of ineffective assistance of counsel, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that but for counsel's deficient performance the result of the proceedings would have been different. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370, 1372. The defendant must present strong and convincing evidence to rebut the heavy presumption that counsel's performance was competent. *Id.*

 Scott argues that his trial counsel was ineffective because he based Scott's self-defense strategy upon the taped statement which Scott gave to police, despite the fact that Scott had given an initial statement to police in which he denied any involvement in the crime. In the second statement Scott admitted his involvement but contended that he was acting to defend himself from the aggressions of Pryor. Scott argues that, had he been allowed to testify, he could have clarified the inconsistencies between these statements, and his attorney's failure to advise him to do so resulted in his conviction.

We find no evidence that the defense counsel's decision to advise Scott not to testify was unreasonable. In this case, Scott's theory of self-defense was well documented in his second statement to police. Had Scott taken the stand, the prosecutor would have undoubtedly subjected him to intense cross-examination on the inconsistencies between the two statements. Such examination could have served to further emphasize the discrepancies between the two statements. Finally, there is no evidence that, had Scott testified, he would have added any additional information to the self-defense theory contained in his second statement to police. Thus, we conclude that defense counsel's decision to advise Scott not to testify was not unreasonable, and, even if Scott had testified, there is no evidence that this would have altered the outcome of the trial.

## ISSUE V

 Finally, we address the dissent's view that we should vacate the direction that Scott's sentence be consecutive to "any violation of probation imposed."

IC 35–50–1–2(a) accords the trial court discretion to impose consecutive or concurrent sentences. *Kendrick v. State* (1988) Ind., 529 N.E.2d 1311 interpreted this section as having application only when and to the extent that the court is imposing sentences on more than one count of conviction then before it.

In seemingly straightforward terms IC 35–50–1–2(b) then states:

If a person commits a crime: (1) after having been arrested for another crime; and (2) before the date he has been discharged from probation, parole, or a term of imprisonment imposed for that other crime; ... the terms of imprisonment for the crimes *shall* be served consecutively, *regardless of the order in which the crimes are tried and sentences are imposed.*

(Our emphasis.)

Even so, uncertainties have arisen and were explored at some length by Judge Sullivan in *Arnold v. State* (1989) Ind.App., 539 N.E.2d 969, 973–976. The occasion for much of such discussion has come from the question of whether a person convicted upon a guilty plea should be entitled to have his plea set aside because the court which sentenced him did not explain the potential for consecutive sentences arising from subsection (b). *See, e.g., Kendrick and Arnold, supra.* As a practical matter our trial courts might forestall such arguments by incorporating into their advisements upon the taking of a guilty plea the requirements of subsection (b).

We also note that in *Hutchinson v. State* (1985) Ind., 477 N.E.2d 850 and *Haggard v. State* (1983) Ind., 445 N.E.2d 969 our supreme court interpreted subsection (b) as requiring not only arrest but also conviction on the "other" offense before the mandatory sentencing requirement is triggered. These

---

**5.** Scott also apparently contends that he did not knowingly or voluntarily waive his right to testify. Notwithstanding any waiver of this issue due to the failure to make any cogent argument as required under Ind. Appellate Rule 8.3(A)(7), the record clearly shows that the trial court judge advised Scott of his right to testify and that Scott understood this right. We find no error in Scott's waiver of his right to testify.

rulings have led in turn to the stated requirement that when imposing consecutive sentences, the trial court should expressly state whether it is applying subsection (a) or (b) in order that the reviewing court may determine whether the sentence has been properly imposed. *Bartruff v. State* (1990) Ind., 553 N.E.2d 485.

Scott was, of course, convicted after a trial on the merits. The presentence investigation report filed before sentencing disclosed that in June, 1990, Scott was charged with aiding dealing in marijuana, was convicted and placed on probation and a probation violation was pending at the time of the presentence investigation. In addition the report showed that on December 10, 1991, Scott was sentenced and placed on probation for one year for the offense of public intoxication and that a probation violation proceeding was also pending in that case.

Under *Bartruff* the trial court erred by not specifying that he was ordering the sentence pursuant to IC 35–50–1–2(b). On the other hand, we presume the court knows and will follow the law and in accord with *Kendrick* that excludes the possibility of applying subsection (a) in this case. Furthermore, since the court had before it through the presentence investigation report, which was unchallenged, the necessary information to determine the applicability of subsection (b), the *Bartruff* error was harmless.

There remains the question, addressed by Judge Sullivan, of how the court in this case can order this sentence to be served in consecutive order when at the time of sentencing it is uncertain what action will be taken in any probation revocation proceeding. In our view the procedural quandaries inherent in subsection (b) must give way to what we perceive to be a clear legislative mandate for the execution of consecutive sentencing. We are confident that the Department of Correc-

tions, or other appropriate administrative agency, presented with the facts in a particular case, can and will appropriately credit to a convicted person service of that person's sentence. If the agency fails to do so the convicted person is not without remedy.

In sum, then, we find that IC 35–50–1–2(b) required that Scott's sentence for the instant offense be served consecutively to the sentences for any offenses for which he had been convicted at the time he committed the instant offense and from which he had not been discharged from probation at the time of sentencing for the instant offense. From this it follows that the court committed no prejudicial error in its sentencing order.

For the foregoing reasons, the judgment is affirmed.

HOFFMAN, J., concurs.

SULLIVAN, J., concurs in part and dissents in part and files separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I concur in that portion of the majority decision which affirms the battery conviction.

I dissent, however, from the decision insofar as it affirms the trial court's order that the six-year sentence be served "consecutive to any violation of probation imposed ...". Record at 298.[6]

In this regard, the case before us is not unlike *Arnold v. State* (1989) 2d Dist.Ind. App., 539 N.E.2d 969, *trans. denied.* With respect to a guilty plea conviction, we stated there: "[W]hen the court ... entered judgments of conviction, the court could not be aware of or be required to anticipate the ultimate disposition of any probation revocation issue." 539 N.E.2d at 973.

The majority decision here endorses such speculative anticipation. The resulting and unintended consequences might well frus-

---

**6.** The crime of Battery is defined by Ind.Code § 35–42–2–1:

> A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is:
>
> . . . . .
>
> a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon.

IC 35–42–2–1(a)(3).

trate, rather than aid, the statutory intendment. For example, if the probation court does not revoke probation and does not impose an executed sentence, it could be argued with some degree of merit that the six-year sentence imposed by the trial court would never commence to run. In any event, it is my view that the case law set forth in *Arnold, supra,* prohibits a trial court from ordering that its sentence run consecutively to an as-yet, non-existent sentence.

In this regard, our case is dissimilar to *Menifee v. State* (1992) 2d Dist.Ind.App., 601 N.E.2d 359. In *Menifee,* we approved the imposition of a sentence consecutive to a sentence *already* imposed as a result of a probation violation determination.

I fully join and subscribe to the majority's strong suggestion that trial courts advise guilty-plea defendants as to the requirements of IC 35–50–1–2(b) and, further, that all courts imposing consecutive sentences expressly state whether they are applying (a) or (b). Nevertheless, for the reasons earlier stated, I would affirm the conviction and the six-year sentence, but would require the trial court to vacate its order that the sentence be served consecutive to any future sentence imposed for a probation violation.