Scottie McLEAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–9312–CR–462.

Court of Appeals of Indiana,
Fourth District.

Sept. 6, 1994.

over a criminal defendant's sentencing. *See*    *Williams v. State* (1985), Ind., 485 N.E.2d 100.

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

RILEY, Judge.

## STATEMENT OF THE CASE

Defendant–Appellant Scottie McLean (McLean) appeals from his conviction of two counts of murder;[1] conspiracy to commit robbery, a class B felony;[2] auto theft, a class D felony;[3] and attempted murder, a class A felony.[4]

We affirm.

## ISSUES

McLean presents three issues for our review which we re-state as follows:

1. Whether the admission of State's exhibits seventy-five and seventy-six constituted reversible error.

2. Whether the trial court erred when it refused to give defense's tendered accomplice testimony instruction.

3. Whether sufficient evidence exists to support McLean's convictions of murder and felony-murder.

## FACTS AND PROCEDURAL HISTORY

The record reveals that on December 15, 1991, McLean together with Tony McMiller and Charles Johnson began plotting various

---

1. IND.CODE 35–42–1–1 (1993 Supp.).

2. I.C. 35–42–5–1 (1988).

3. I.C. 35–43–4–2.5 (1993 Supp.).

4. I.C. 35–42–1–1 (1993 Supp.); I.C. 35–41–5–1 (1988).

crimes to obtain money. McMiller suggested stealing a car and robbing a drug dealer that he knew. McMiller testified that they then went into McLean's closet in his apartment and took a 30/30 rifle. Charles Johnson also possessed a firearm, a .38 caliber handgun. David Burley, another friend of McLean, offered to steal a car for the group. Burley stole a white Cutlass Oldsmobile and McMiller, Johnson and McLean set out with their respective firearms to rob the drug dealer. When that plan proved impossible, they continued driving around to look for another victim.

They eventually stopped the car in front of the Fountain Lounge and McLean and Johnson jumped out of the car. McLean pointed his rifle at the people outside of the lounge and demanded money and started shooting into the crowd. Johnson was shooting his gun also. After the shooting, McMiller drove McLean and Johnson back to McLean's home on Post Road.

Upon returning home, McLean and Johnson proceeded to tell Burley about how they had shot a man. Burley testified that they were laughing when they explained to him that they shot the man in the back as he was running inside. McLean made hand gestures demonstrating to Burley how he shot the rifle.

Upon arrival on the scene of the shooting, a police officer spoke briefly to the victim, Keith Wolfe. Wolfe explained to the officer that he was standing in front of the Playhouse of Champions when he was approached by what he thought to be robbers. He heard gun shots and fell to the ground, then realized he had been shot. He later died.

Later on December 15, 1991, Donnell Reed and Tajuan McKinney were watching television when they received a phone call from Reed's sister which ended abruptly. Reed received a second phone call from another friend informing him that McLean had just slapped Reed's sister. Concerned for his sister, Reed gathered several friends to confront McLean.

Once in the apartment complex, the group split up to search for McLean's apartment.

Reed saw McLean armed with a rifle and at one point someone was holding a gun on McKinney. David Bickett testified that as he was walking away from McLean after confronting him regarding slapping Reed's sister, McLean shot him in the hip. As McKinney and Reed were getting into the car to leave, they heard a gunshot. As they drove away, they heard a second shot. Reed stopped the car at a stoplight to check it for bullet holes. As McKinney was checking his car he was shot. McLean was seen firing toward the intersection from an abandoned Marathon station. The bullet struck McKinney's heart and both lungs. He later died.

## DISCUSSION AND DECISION

### I. *Admissibility of Exhibits*

■ McLean contends that the trial court erred when it admitted, over defense's objection, State's exhibits seventy-five and seventy-six. John E. Pless, a professor of pathology at the Indiana University Medical Center and witness for the State testified at trial that the autopsies of victims Keith Wolfe and Tajuan McKinney were performed by pathologists under the direction of Dr. Pless. Through Dr. Pless, the State offered exhibits seventy-five and seventy-six, which consisted of close-up autopsy photographs of the wounds sustained by McKinney. The photographs were admitted over defense's objection. Specifically, McLean argues that the photographs were cumulative and unduly prejudicial because Dr. Pless' testimony contained a clear and graphic description of the injury sustained by McKinney. McLean argued at trial that only one of the photographs should be admitted.

■ The admission of photographic evidence is within the sound discretion of the trial court. *Scott v. State* (1994), Ind.App., 632 N.E.2d 761, 764. We will reverse the decision of the trial court only upon an abuse of discretion. *Id.* Once it is established that a photograph is an accurate depiction of that which it is intended to portray, its admissibility turns on the question of relevancy. *Id.*

Photographs are relevant if they depict scenes that a witness is permitted to describe in their testimony. *Baird v. State* (1992), Ind., 604 N.E.2d 1170, 1189, *cert. denied Baird v. Indiana* (U.S. Ind., 1993), —— U.S. ——, 114 S.Ct. 255, 126 L.Ed.2d 208. A relevant photo will be admitted into evidence unless its relevancy is outweighed by its tendency to inflame the passions of the jury. *Id.*

State's exhibits seventy-five and seventy-six were admitted over McLean's objection during the testimony of Dr. Pless. The photographs were taken as part of the autopsy at the morgue. Both photographs depict the gunshot wound in the left armpit of Tajuan McKinney. Dr. Pless testified that the photographs would assist him in his testimony regarding the description of the injuries suffered by McKinney. Dr. Pless used the photographs to illustrate his testimony regarding the precise nature of the fatal wounds. The gunshot wound was quite extensive. It involved the inside of the victim's arm, a severe graze wound which perforated the chest wall, both lungs and the heart and a large entry wound in the armpit. Dr. Pless further testified that in his expert opinion, the gunshot wound to McKinney's chest was the cause of death.

We do not find the photographs to be shockingly gruesome nor do we find the prejudicial impact of the photographs to outweigh their probative value. The challenged exhibits carry sufficient probative value to support the trial court's exercise of discretion in admitting them. These photographs clearly would have helped the jury understand the testimony of Dr. Pless and fully appreciate the extent of the wounds. The trial court did not err in admitting exhibits seventy-five and seventy-six.

## II. *Jury Instruction*

■ Next, McLean contends that the trial court erred when it refused to give defense's tendered accomplice instruction. Tony

McMiller was an accomplice during the conspiracy to commit robbery, the auto theft and the killing of Keith Wolfe. McMiller testified for the State pursuant to a plea agreement whereby the State agreed to drop all charges against McMiller except conspiracy to commit robbery[5] in exchange for his truthful testimony against McLean.

McLean tendered the following instruction:
The testimony of an alleged accomplice, and the testimony of one who provides evidence against a Defendant as an informer for pay or for immunity from punishment or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witnesses' testimony has been affected by any of those circumstances, or by his/her interest in the outcome of the case, or by prejudice against the Defendant, or by the benefits that he/she has received either financially, or as a result of being immunized from Prosecution; and, if you determine that the testimony of such a witness was affected by any one or more of those factors, you should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict any Defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

(R. 91). The trial court did not give the tendered instruction, but rather gave the following instruction on accomplice testimony:
An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant. An accomplice is competent as a witness for the State or the defendant in the trial of a criminal cause. The testimony of an accomplice is to be received and weighed by the jury in the same manner and according to the same rules as the evidence of any other witness.

(R. 140).
The long-standing rule in Indiana has been that any agreement of leniency regarding an

5. McMiller was originally charged with two counts of murder, conspiracy to commit robbery as a class A felony and auto theft. As a result of his plea agreement, he was charged only with conspiracy to commit robbery as a class B felony.

accomplice who testifies for the State must be disclosed to the jury, but that a cautionary instruction regarding that witnesses credibility need not be given. *Newman v. State* (1975), 263 Ind. 569, 334 N.E.2d 684; *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964. In *Morgan,* the Indiana supreme court explained Indiana's position as follows:

> In *Newman,* we held that the failure to disclose an agreement of leniency between an accomplice and the State constituted reversible error. (citations omitted). That holding requires that the agreement be disclosed to the jury, not that a cautionary instruction pertaining thereto be given ... [S]uch an instruction would have [an] unduly disparag[ing] [effect] on the testimony of the defendants' accomplices, and for this reason, the refusal to give it was proper.

*Morgan,* 275 Ind. at 673, 419 N.E.2d at 968–969. We note for clarity that McMiller was questioned in the presence of the jury regarding the precise terms of his plea agreement.

■ This type of instruction is disfavored in Indiana and the refusal to give such an instruction has consistently been upheld. *See Joy v. State* (1984), Ind.App., 460 N.E.2d 551; *Avance v. State* (1991), Ind., 567 N.E.2d 1149. McLean acknowledges this fact; however, he argues that since the tendered instruction was based on a proper statement of the law and facts and since McMiller was the only eyewitness to these serious crimes, his tendered instruction should have been given. McLean also argues that the court's instruction given to the jury did not contain the substance of his tendered instruction. McLean's arguments are not persuasive. The court's instruction was a correct statement of the law. It stated generally that accomplice testimony should be weighed pursuant to the rules governing the testimony of any witness. We find that the court properly gave its instruction and refused to give McLean's tendered instruction.

### III. *Sufficiency of the Evidence*

■ Finally, McLean contends that the State failed to present sufficient evidence to support his convictions of murder. McLean was charged with and convicted of two counts of murder. The conviction on count II was for the killing of Keith Wolfe while attempting to commit robbery. The conviction on count IV was for the killing of Tajuan McKinney. McLean challenges the sufficiency of the evidence supporting both of these convictions.

Our standard of review for sufficiency of the evidence is well-settled. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. If there exists substantive evidence of probative value to establish every material element of an offense beyond a reasonable doubt, we will not disturb the conviction. *Geans v. State* (1993), Ind.App., 623 N.E.2d 435, 437.

A person commits the crime of murder when he "(1) knowingly or intentionally kills another human being; (2) kills another human being while committing or attempting to commit ... robbery...." I.C. 35–42–1–1.

With regard to the killing of Keith Wolfe, McLean's argument places considerable weight on the credibility of McMiller's testimony. Specifically, McLean contends that McMiller's testimony was inconsistent on whether Johnson was also firing into the crowd at the time of Keith Wolfe's killing. Further, McLean argues that McMiller did not see the actual shooting, and therefore, Johnson could have fired the fatal shot. It is the function of the trier of fact to resolve conflicts in the testimony and to determine the weight of the evidence and the credibility of the witnesses. The trier of fact is free to believe or disbelieve witnesses as it sees fit. *Hall v. State,* 634 N.E.2d 837 (Ind.App.1994). McLean merely asks us to reweigh the evidence and rejudge the credibility of the witnesses, which we will not do. Furthermore, the firearm and toolmark examiner from the crime lab testified as to comparison results and opined that the bullet removed from Wolfe was fired from McLean's 30/30 caliber rifle. We find that the evidence is sufficient to support McLean's conviction for the murder of Keith Wolfe.

With regard to the conviction on count IV, McLean argues that none of the State's witnesses actually saw McLean shoot McKinney. However, the record reveals that Michael Adams, a witness for the State, saw McLean raise up from the bushes near the gas station and fire the rifle toward the street where McKinney was shot. Adams testified that it was a long gun with a scope on it. Further testimony revealed that McLean was seen with the rifle back at his apartment complex, that he shot Bickett in the hip as Bickett was exiting and that several witnesses heard shots during that time. Further, the ballistics expert testified that in his expert opinion and based on the comparison tests he performed, the bullet removed from the body of McKinney was also fired from McLean's 30/30 rifle. The evidence is sufficient to support McLean's conviction for the murder of Tajuan McKinney.

### CONCLUSION

Based on the foregoing, we conclude that the trial court correctly admitted State's exhibits seventy-five and seventy-six and correctly refused to give defense's tendered instruction on accomplice testimony. We further conclude that McLean's convictions for the murder of Wolfe and McKinney were supported by sufficient evidence.

The trial court is affirmed in all respects.

HOFFMAN, J., and RATLIFF, Senior J., concur.